UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ANDRZEJ MADURA and**
**ANNA DOLINSKA-MADURA,**              Civil Action No. 8:06-cv-2073-T-24TBM
                    Plaintiffs

vs.

**COUNTRYWIDE HOME LOANS, INC., and**
**FULL SPECTRUM LENDING, INC.,** Defendants

**RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS OR, ALTERNATIVELY, TO COMPEL TO ARBITRATION**

Plaintiffs, Andrzej Madura and Anna Dolinska-Madura, file their response and their Memorandum of Law in opposition to the defendants' March 2, 2007 motion to dismiss in its entirety and with prejudice or, alternatively, to compel arbitration, and say:

1. Defendants' motion to dismiss the plaintiffs' complaint prejudice is defective because:

a ). It is not supported by the material facts necessary to establish their defense;

b). It is not supported by the application of law to those material facts;

c) Includes fraud upon this Court on the central issue of their defense;

2. Defendants and their attorney, on pg. 2 of their motion, attempt to commit fraud upon this Court by misrepresenting material fact central to this case. Defendants misrepresented *that Mrs. Madura did not sign the Promissory Note.* Even a cursory reading of Promissory Note (**EXH. K-1C**) of Comp. and **JN1** at pp **38-40**, demonstrates that Mrs. Madura signed the July 26, 2000 Promissory Note. Further, this Promissory Note was filed at the July 2, 2002 hearing, without defendants objections. See pages 9-11 of the proceeding in filed today by plaintiff Judicial Notice, marked as **JN1**. This Note was disclosed at the April 20, 2004

Summary Judgment hearing. See pages.16 and 25 of **JN 4** of the plaintiffs' Judicial Notice. Next, the defendants and their attorney misrepresented that the trial Judge concluded that Mrs. Madura did not she sign the Promissory Note. An Order (defendants' **JN 3**), demonstrates that the Judge did not state that Mrs. Madura did not sign the Promissory Note. On the contrary, Judge Gilner, at the Feb. 25, 2004 hearing, in the presence of attorney Mr. Heller Esq., (who, ( apparently, drafted and signed electronically this defendants' motion to dismiss) , expressly and clearly stated that he had knowledge that she signed the Promissory Note. See pgs.8 of the plaintiffs' **JN 2** . This Court should not disregard fraud upon this Court in the first pleading.

3.    Defendants, on pg 3, misrepresented that they waived the "prepayment penalty." There never existed any "prepayment penalty" since the inception of this loan. See the Promissory Note, **EXH K-1C** and the TILA document signed at closing, **EXH K-1D.** The issue here is that the defendants, by signing plaintiffs' names on the contract, lacked the authority to bind it to the contract containing the arbitration cause **EXH Q-1** and **Q-2** and pg 2-3 of Comp.

4.    Defendants, on pg 3, mislead that the plaintiffs, sued for a violation of the RESPA., 12 USC, s. 2601. The Complaint, **EXH N**, shows this material fact misrepresentation.

5.    The reason that Mr. Madura has not initiated arbitration is simple. If no contract was formed, then the arbitration agreement, which was a *part* of that contract, was not formed, either.

6.    The defendants' reasoning on pg. 5 of their motion, that Mr. Madura litigated through his wife is not supported by the record. Defendants omitted that the Supreme Court dismissed her petition for lack of jurisdiction, not on the merits, and concealed that her certiorari petition pertaining to the 2nd District decision is pending in the U.S. Supreme Court case No: 06-9074.

**I    The instant complaint is distinguishable from the plaintiffs' state court complaints**

Defendants, on pg. 6 of their motion, misrepresented that the instant claims are identical to the plaintiffs state court claims. Even a cursory reading of Mr. Madura's May 1, 2002 state complaint demonstrates that he did not seek rescission as he seeks in all counts of instant complaint and he did not sue for violations of TILA. The state court never ruled his instant 19 claims. The trial court compelled his three claims to arbitration but did not rule on merits. Mrs. Madura's instant complaint demonstrates that she, in nineteen counts, sues for rescission But, in the state court, she did not seek for it. Defendants' theory that some counts arise from TILA does not support anything because she claims rescission for different reasons, including two TILA only:

a)    Action on contract and liability founded on written instrument;

b)    Defendants' failure to honor the plaintiffs' two notices for rescission;

c)    Defendants' failure to disclosure numerous provisions of the contract;

Mr. Madura did not sue for violations of TILA in the State Circuit Court. Accordingly, the state court never ruled Mr. Madura's TILA and other claims before this court. Further, the trial court, by compelling some claims to arbitration did not rule on merits.

## LEGAL DISCUSSION

### A.  Legal Standard

Defendants submitted a very narrow legal standard. They cited inapplicable *Rooker-Feldman* doctrine and *Powell*. Defendants and their attorney knew or should have known that a correct is *Exxon Mobil, Corp v. Saudi Basic Industries Corp.*, 544 U.S.280, 125 S.Ct.1517, 16 L Ed. 2d 454 (2005) where U.S. Supreme Court discussed (and limited) the application of *Rooker-*

*Feldman* to cases (where a plaintiff presents *"an independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id* at 1527 ( internal alterations and citation omitted ). Therefore, the correct Legal Standard for motion to be dismissed for lack of jurisdiction should include as minimum the *Exxon* and *Volt Info. Scis. Inc v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489, 474,109 D.Ct.1248, 103 L Ed. 2d 765(1983) (parties cannot be forced to submit to arbitration if they have not agreed to do so) at 478 ; *Buckeye Check Cashing, Inc. v. Cardegna,* 126 S. Ct. 1204 ( 2006) where Justice Scaglia, recently, reviewed the severity of *Prima Paint; Three Valleys Water Dist .v. E.F. Hutton &Co, Inc.,* 925 F2d 1136 (9th Cir1991)(holding that the court, not the arbitrator, must decide whether the signatory had the authority to bind the plaintiffs to contracts containing arbitration clauses), plus other cases similar to the present case, and:

a.  The Constitution grants judicial power that extends to "Cases", not merely claims arising under the Constitution and acts of Congress. U.S.CONST. Art. III. *Id* Par. 2. Congress also grants judicial power to hear "Controversies" between citizens of different states. *Id.* Congress has vested the judicial power in federal district courts in the following, among other, terms:

\*  " The district courts shall have original jurisdiction of all civil actions **arising under** the Constitution, laws, or treaties of the United States," 28 U.S.C. Par.1331 (emphasis added);

\*  The district courts shall have original jurisdiction of all civil actions **where the matter** in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between ....citizen of different States, " 28 U.S.C. Par 1332(a) ( emphasis added); and

\*  "[With certain excerptions], in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form a part of the same **case or controversy** under Article III of the U.S. Constitution," 28U.S.C.Par 1367(a)

b.  Regardless of the federal court's capacity to act as in diversity cases, however, the primary power of federal courts is to decide "Cases" arising under the Constitution, laws, and treaties of the United States. Art. III Par. 2.  In these latter so called "federal-question" cases, federal courts sit as common-law courts of a sovereignty instituted by grant from the citizenry and vested with supremacy within certain enumerated powers. *Id* Par. 1-2; 28 U.S.C.

### B.  This Honorable Court Has Subject Matter Jurisdiction.

### 1.  The Correct Interpretation of *Rooker-Feldman* Doctrine

For *Rooker-Feldman* doctrine to bar this Court's jurisdiction, the following four criteria must be met :

(1)  the party in federal court is the same as the party in state court;

(2)  the prior state court ruling was a final or conclusive judgment on the merits;

(3)  the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceedings; and

(4)  the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

See *Amos v. Glynn County Bd. of Tax Assessors,* 347 F. 3d 1249, 1265 n. 11 ( 11th Cir 2003) (internal citations omitted); *Mickens v. 10th Judicial Cir.,* 181 Fed. Appx. 865 (11th Cir 2006)

A federal claim is " *inextricably intertwined* " with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. See *Goodman ex rel. Goodman v. Sipos,* 259 F.3d 1327( 11th Cir.2001) *at 1331n 6.* and this Court, Div. Myers' holding in *898 5$^{th}$Ave. S. Corp. v. Marolax,* 2007 WL 470511 (M.D.Fla)

It is undisputed that the plaintiffs, in the instant case,  are not complaining of a legal injury caused by a state court judgment and they are not asking this Court to review and rejection

5

those judgments. It is no dispute that the trial court order compelling Mr. Madura's claims arbitration was not a judgment on merit and that did not rule on the plaintiffs' rescission clams

The United States Supreme Court recently revisited the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517, 1526 161 L Ed. 2d 454 ( 2005). .To establish federal question jurisdiction the plaintiffs must demonstrate that the complaint alleges a violation of constitutional rights or a right created under federal law, 28 U.S.C s.1331. For diversity jurisdiction, the plaintiffs must demonstrate that the parties are citizens of different states and the matter on controversy exceeds $ 75,000, 28 U.S.C. s. 1332. The circumstances of this case established both federal question and diversity jurisdiction. In *Exxon,* the plaintiff took interlocutory appeal in the 3rd Circuit Court of Appeals, which on its own motion raised to U.S. the question of whether subject matter jurisdiction over the case fails under the *Rooker-Feldman* doctrine because had been litigated in state court. *Id.* 1525. The U.S. Supreme Court granted certiorari and answered that federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court. *Id* 1526-27. Furthermore, the Supreme Court stated that a district court is not without subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. *Id.* Defendants concealed it. Therefore, the U.S. Supreme Court has discussed that where there is " parallel state and federal jurisdiction, *Rooker-Feldman* is not triggered simply by entry of judgment in state court. The Supreme Court held in *Exxon* that the *Rooker-Feldman* doctrine " is confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

district courts review and rejection of those judgments. " *Id.* at 284, 125S.Ct.at 1521-22 . The Supreme Court noted that where a plaintiff presents *"an independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."* *Id* at 1527  Defendants and their attorney concealed it  The Supreme Court held that: " Exxon Mobile had not repaired to Federal Ccourt to undo the state court judgment, and the *Rooker-Feldman* did not vanquish jurisdiction after state court's judgments " Id at 1527-28.  In the instant case, the plaintiffs had not repaired to this Court to undo the state court judgment, and similarly *Rooker-Feldman* did not vanquish jurisdiction  In summary, the defendants and their attorney's motion is defective because they concealed before this Court the correct authority the U.S. Supreme Court in *Exxon*  limiting the application of the *Rooker-Feldman* doctrine  In conclusion,  it is necessary to consider the circumstances of this case in light of *Exxon* which bars demanded dismissal with prejudice .

**2. *Rooker-Feldman Doctrine  Does Not Vanquish Jurisdiction over Mrs. Madura's Claims***

For the First,  the defendants and their attorney attempt to commit fraud upon this Court by stating that Mrs. Madura did not sign the Promissory Note. See details on pp. 1-2 of response..  Next, the defendants misrepresented that her claims flow from a mortgage and "prepayment penalty." The defendants' theory  bout "prepayment penalty" is without merit because such penalty never existed at closing and was the product of a forgery. The US Supreme Court and federal courts never held that the *Rookes-Feldman doctrine* bars claims flowing from the same transactions  The defendants' theory is without merit. Mrs. Madura has not repaired to this court to undo the  state court judgment. She is not inviting this Court review and rejection the

7

state court judgment. Her claim are sufficiently untwined from her claims in the state court to avoid the application of *Rooker-Feldman*. Her federal relief may succeeds without proving that the state court wrongly decided the issues before it. See *Goodman* and this Court, Div. Myers' holding in *898 5th Ave. S. Corp*. She claims rescission of the loan transaction for failure to provide her with a notice to cancel. Her clams are independent of her state claims

### *Defendants' Theory that " Mrs. Madura is Not a Borrower" is Without Merit*

Defendants argue on page 2 of their motion that Judge Gilner concluded that she was not a borrower ( Judge Gilner supported it with section 687.14(2) , Florida Statute, pertaining to definition of a borrower. See JN 11 at pg .4   Section 687.14(2) is barred by the correct definition in s. 687.071 which pertains to Mrs. Madura's state claims for criminal usury .

To the extent of the fact that the plaintiffs are not seeking this Court review the his judgment it should be noted that Mrs. Madura fulfilled all requirements of all state definitions of a borrower and definition of an applicant provided by section . 202.2 (e) of Equal Credit Opportunity Act Code of Federal Regulations, Title12, titled: "Definitions", which provides:

> 202(e) :   " Applicant means any person who requests or who received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. "

In the present case, the defendants sent applications for a loan to Mrs. Madura two weeks prior to closing Comp.at pg.1 . Mrs. Madura received a loan and she is contractually liable . She signed all loan documents including Mortgage **EXH A** and the Adjustable Rate Rider **EXH B** where the defendants named her as a borrower She received a loan in the form of a wire to her bank account at First Union Bank and the defendants paid her debts She signed a mortgage as security for a loan, **EXH A** of Comp. She is a borrower and is responsible (see

Promissory Note, **EXH K-1C** and Ch. **D** and **E** of the Adjustable Rate Rider, **EXH B** . She is not seeking this Court review a Judge Gilner's finding, so his finding was a correct . In this case, defendants' arguments are still without merit while they concealed that she, still may sue them for rescission for failure to provide her with Notice to Rescind and new disclosures and for failure to honor her two Notice Notices of Rescission Counts I, III -V and **EXH F** and **EXH R** of Comp.  Defendants concealed that: "where consumer borrowed money from a lender to refinance a home mortgage and, to secure a loan, he and his wife gave a lender a mortgage on their home, both consumer and his wife had the right to rescind the transaction under TILA and Regulation Z, even though only the consumer was liable on the debt secured by the mortgage.TILA,1635; 12 C.F.R s 226.23 (a)(1) *Id* 452   See *In Re Jones*, 298 B.R.451 ( Bkrtcy D Kan.2003).  Further, where both consumer and his wife had the right to rescind the loan transaction with the lender, even though only the consumer was liable on the debt secured by the mortgage on their home, the lender was obliged not only to give consumer two copies of the notice of the right to rescind and one copy of the disclosure form, but also to give wife her own copies. *Id* 452.  Thus, this theory that she was not a borrower has no merit .

*Rooker-Feldman Doctrine  Does Not Vanquish Jurisdiction over Mrs. Madura's Claims*

Mrs. Madura's instant claims of fraud are different than her state fraud claims. In state Counts V and VI for fraud ( EXH O), she did not seek rescission but, in her instant complaint, she does.  In her instant fraud claims,  she is seeking rescission under s. 817.54, Count IX, rescission under s. 817.034(4)(b)(1),  Count XVII, and rescission and  damages incurred by paying interest rate on a  never existing contract ( Count XVI). None of these fraud claims are inextricably intertwined with the state court adjudication of her state fraud claims because *her*

9

*federal relief will not be predicted upon a finding that the state court was wrong.* " See *898 5th Ave. Corp* . Mrs. Madura, in Count VI of state claim, sues the defendants for fraudulent demand to pay never existing "prepayment penalty". Now she is not suing for this in her fraud claims. Therefore, her instant fraud claims are sufficiently untwined from the state court adjudication . It is undisputed that Mrs. Madura , in all instant counts, seeks a rescission of the contract but she did not seek it in her state complaint. Thus, *Rooker-Feldman* doctrine is inapplicable. In state court, her two claims only, pertain to the defendants' incompliance with the TILA disclosure requirements. It is true that she, in her federal complaint, sues the defendants also for other misdisclosure, but in other counts she only seeks a rescission for the *failure to honor her notice of rescission and for failure to disclosure her right to rescind (failure to provide her notice to cancel )* . Her instant action is an action on a contract and liability founded on written document which is not barred by five years statute of limitation , s.95.11(2)(b), because she filed federal claim within five years of finding out of defendants' crime.( See Counts VI, VII of instant complaint). In her state complaint she did not claim it Thus, the *Rooker-Feldman* doctrine is inapplicable and the defendants misrepresented issue Federal Courts recognize a difference between the claim for rescission of contract under TILA claims and claim of violations of disclosure or incompliance with disclosure .under TILA. Most recently, this issue, was decided by Judge Isicoff, in *Daniels v. Funding USA, Inc.*( *In re: Daniels*). 350 B.R. 619, 623 ( Bankr. S.D. Fla. 2006) . Judge Isicoff determined that just because TILA authorizes a borrower to raise TILA claims in the state court, it is not required that the borrower do so .See *Id.* at 625-6. The court in *Daniels* followed the determination in *In re: Tomasevic* that TILA rescission claims go: " to making of the loan rather a dispute as

to obligations under the loan " ( she disputed obligations in the circuit court ). Because the claims are not the same, *re judiciata* does not bar this TILA claim " See *In Re: Tomasevic* 275 B.R.86 101( Bankr M.DFla.2001) ( comment added) . Mrs. Madura's claims of validity or enforceability of the forged contract does not affect the defendants' compliance or non compliance with the TILA disclosure requirements. (her claims in state court) See *Brady v. C.F. Shwartz Motor Co. Inc.*, 723 F. Supp.1045, 1050 (D. Del.1989) ; *accord Walker v. Contimortgage ( In re Walker)*, 231 B.R. 725, 734( Bankr. N.D. III 1999).

In summary, Mrs. Madura instant "TILA claims" are different and are sufficiently untwined from TILA claims in the state court to avoid the application of *Rooker-Feldman* . This Court held: "A claim is inextricably intertwined with the state court adjudication when federal relief can only be predicted upon a finding that the state court was wrong." See *898 5th Avenue Corp v. Marolax Handelsenue*, 2007 WL 470511 ( M.D. Fla.) . It is undisputed that Mrs. Madura in the instant case, is not complaining injury caused by the state court judgments rendered before commencing these proceedings and that she is not inviting this Court to review and to reject of those judgments ( summary judgment for the defendant ). Further, this Court does not need to declare that the circuit court's order was wrong in order to award federal relief of rescission sought by Mrs. Madura . In summary, Mrs. Madura's instant TILA claims are sufficiently untwined from her TILA claims in the circuit court and *Rooker-Feldman* is inapplicable pursuant to this Court as well as to other federal courts' definition of inextricably intertwined claims and do not warrant dismissal for the lack of jurisdiction..

**3. *The Circumstances Of this Case and the U.S. Supreme Court's Revisiting Rooker-Feldman Doctrine Proved Inapplicability of Rooker-Feldman to Mr. Madura's claims***

For the reasons discussed above for Mrs. Madura, this court has subject matter jurisdiction over the claims asserted by Mr. Madura. The Circuit court ordered Mr. Madura to arbitrate his May 1, 2002 claims ( **EXH N**) only and did not rule on claims before this Court. He is suing in all counts for the rescission of the contract never provided for review or for signing .it. Defendants , by signing it with plaintiffs' signatures, lacked authority to bind it to the contract containing the arbitration agreement.  They committed fraud by inducing Mr. Madura to sign arbitration agreement and fraudulently provided Mr. Madura with the contract to sign which they later destroyed or concealed . Defendants, during the state court's proceeding committed many times fraud upon the circuit court ( See Mrs. Madura 10/8/2003 motion for default as sanctions upon the defendants' fraud upon the Court, See defendants' **JN 18** pos.111and are doing so now (see pg 1-2 of response).Mr. Madura not repair to this Court to undo the state court's judgment and is not inviting this Court review and rejection of those judgment.

His instant claims are untwined from his state court claims of conspiracy and forgery .

His federal relief is not predicted upon a finding that the state court was wrong. " *898 5th Ave. Corp* .  U.S. Supreme Court in *Exxon* discussed (and limited) the application of *Rooker- Feldman doctrine* to cases similar to the instant case.  When a plaintiff presents   "*an independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.*" *Id* at 1527

### (a) (b)   The Issue Whether Rooker -Feldman Doctrine Applies to Non -Final or to Final Orders is Immaterial In the Circumstances of this Case

Defendants mud the water by directing this court's attention to the issue of whether *Rookes -*

*Feldman* doctrine applies to Non-final or to Final orders. This is irrelevant to this case. The truth is that an order compelling to arbitration is a non-final order and this fact is known by the defendants from the plaintiffs' appeal of their order compelling Mr Madura forgery claims to the arbitration at the hearing on the defendants' unnoticed motion to compel. See this issue in the plaintiffs' opposition to oral arguments filed to day and docket, judicial notice JN 18, pos. 7-9 are the plaintiffs' notices of the July 2, 2002 evidentiary hearing on their motions to strike as a sham the defendants' motions . Pos 10 is defendants' not served "Notice of hearing" filed after hearing which clearly shows that was filed it at 3:30 p.m., four hours after the July 2, 2002 dismissal evidentiary hearing.

   Defendants and their attorney, knew or should have known that order compelling to arbitration is non-final order. Fla. R App. P 9130(a)(3)C)(iv) .

   Next, the defendants and their attorney, misrepresented that this case issue is a "prepayment penalty" . Prepayment penalty never existed in the contract signed at closing but is added to the forged altered contract which never existed. Mr. Madura in his eighteen counts of instant Complaint, is not suing for " prepayment penalty" but for the rescission of the contract as an action on the contract and liability founded on written instrument and sues within five years of the statute of limitation governed by section 95.11(20(b), Florida Statute.  Even a cursory reading of Mr. Madura's complaint in the state court demonstrates that Mr. Madura is not suing for the rescission or voidance of the loan transaction. The defendants and their attorney theory that circuit court's order did not reserve jurisdiction to enter an arbitration award is without the merit and frivolous. It is imperative that defendants and their attorney knew that their statement is moot because an arbitration award may be confirmed or vacated

by the Circuit Court    See sections 684.24, and 684.25, Florida Statute. Nothing in this may support their motion to dismiss entire Mr. Madura's instant complaint with prejudice.

**4. Mr. Madura' Complaint Should not be Compelled to Arbitration in the Light of the U.S. Supreme Court Revisiting of *Prima Paint* and *Buckey Cashing* and Finding that the Arbitration is Inapplicable in Similar to this Case Circumstances. Here no Contract was Formed, then the Arbitration, which was Part of that Contract, was not Formed, Either.**

*There is no contract between the parties in the present case*

Defendants, just after closing, destroyed or concealed the original Promissory Note and the TILA document and produced another contract which they signed with plaintiffs' names and never provided it for a review or for signing to the plaintiffs. See **EXH Q-1** and **Q-2** and pg 2-3 of Comp. Mr. Madura's instant fraud claims as well as other claims are barred from arbitration because he, clearly, alleges that the defendants fraudulently induced him to sign an original loan documents and arbitration agreement pertaining to this original proposed loan and hide it.   Their true intention was to breach the contract by destroying it and to produce altered contract  and to sign plaintiffs' name on it.  Such claims are barred from arbitration by the US Supreme Court and other federal courts' holdings below. Defendants by signing "their contract " lacked the authority to bind it to the contract containing the arbitration cause, the very existence of the agreement was disputed and the court must resolve the treshold question of whether an arbitration agreement exist; *Three Valleys Mun, Water Dist .v. E.F. Hutton &Co, Inc.,* 925F.2d1136,1138, 1144(9$^{th}$Cir.1991) (holding that the court, not the arbitrator must decide whether the signatory had authority to bind the plaintiffs to the  contracts containing the arbitration clauses .United States Supreme Court in *Volt Info. Scis. Inc v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489, 474, 109 D.Ct.1248, 103 L.Ed. 2d 765(1983) that

14

"parties cannot be forced to submit to arbitration if they have not agreed to do so " *Id* at 478

Defendants, by these wrongful actions, breached the original contract signed with plaintiffs. Therefore, the plaintiffs rescinded it and the defendants failed to honor this rescission which is at issue before this Court. The forged by the defendants contract (**EXH Q-1** and **Q-2**) is void *ab initio*. Therefore, in the present case, there is no contract between the parties.

Defendants, on pg. 4 of their motion, asked why Mr. Madura has not initiated the arbitration ? First, Mr. Madura was twice induced ( on July 11, 2000 and on July 26, 2000 ) to sign an arbitration agreement which pertains to the Promissory Note and the TILA document provisions reviewed by the plaintiffs prior to closing and signed at closing.( **EXH. K-C** and **EXH. K-1D** ). See an Arbitration Agreement, which provides that a "Credit Transaction" means a proposed obligation. See **JN 2** at pp. 66 and 68. Therefore, these arbitration agreements pertain to the proposed and signed at closing by the plaintiffs Promissory Note and the TILA document ( **EXH K-1C** and **EXH. K-1B** of the Comp.) . These arbitration agreements do not pertain to the forged and concealed before the plaintiffs contract (**EXH Q-1** and **EXH Q-2** of the Comp.), which was never personally signed by the plaintiffs, but was hidden by the defendants and uttered in their Title Insurance Agency Records. Therefore, Mr. Madura never signed the customers' agreements at issue and he was not bound by the arbitration provisions with them. The Federal Court in *Chastain v. Robinson Humbrey Co.*, 957F.2d 851(11 Cir.1992) acknowledged that: "parties cannot be forced to submit to arbitration if they have not agreed to do so. *Id at 854* ( citing *Volt Info. Scis.,* 489 US at 478) .

Second , Mr. Madura is not going to arbitrate this forged and never existing contract because he is following the *Buckeye Check Cashing, Inc. v. Cardegna,* 126 S.Ct.1204 ( 2006)

where the U.S. Supreme Court, Justice Scaglia, recently reviewed the severity of the *Prima Paint Corp. v. Floo &Conklin Mfg Co.* 388 U.S.395, 87 S.Ct.1801,18L.Ed.2d1270, and held: "The issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion to day addresses only the former, and does not speak to the issue decided in the cases cited by respondents ( and by the Florida Supreme Court) which hold that it is for the courts to decide whether the alleged obligor ever signed the contract, *Chastain v. Robinson-Humphrey Co.*, 857 F.2d 851 ( C.A. 11 1992) ; whether the signer lacked the authority to commit the alleged principal, *Sandvik AB v, Advent Int'l Corp.* 220 F.3d 99 (C.A. 2000); *Sphere Drake Ins. Ltd. v. All American Ins.* Co., 256 F.,3d 587 (C.A.7, 2001), and whether the signor lacked the mental capacity to assent, *Spahr v. Secco* 330 F.3d 1266 ( C.A.10 2003). Justice Cantero, dissenting in *Cardegna v. Buckeye Check Cashing* ,894 So.2d 860 ( Fla..2005) which was overturned by Justice Scaldia, in his opinion, followed Justice Scaldia Justice Cantero analyzed in detail the issues when a claim could not be compelled to arbitration in light of Justice Scaldia and of the U.S. Supreme Court's recent findings in *Buckeye* . Justice Cantero , *Id* 872, held: "As the Sixth Circuit emphasized in *Burden at 489(Burden v. Check Into Cash of Kentucky ,LLC,* 267 F.3d 483, 486-87 (6th Cir.2001), *cert. denied,* 535 U.S. 970, 122 S.Ct.1436, 152 L.Ed 2d 380 (2002) , however, in those cases the question was *not* whether a party assented to a contract that later was alleged to violate state law. 867 F.3d at 490. Rather, in each case , the complaining party alleged that because of some defect in signatory power, no contract was ever formed. See , e.g. *Sandvik* , 220 F.3d at 490 ( holding that where a party claimed that the signee lacked the authority to bind it to the contract containing the arbitration cause , " the

16

very existence of [the] agreement [was] disputed" and the court must resolve the treshold question of whether an arbitration agreement exists.; *Three Valleys* (holding that the court, not the arbitrator must decide whether the signatory had the authority to bind the plaintiffs to the contracts containing arbitration clauses); *Spahr v. Secco,* 330 F.3d 1266, 1273 (10th Cir.2003) ( holding that a claim that the signatory lacked the mental capacity to enter into the contract goes to making of both the contract and the arbitration agreement); *Sphere Drake Ins. Ltd v. All American Ins.* Co., 256 F.3d 587, 590-91( 7th Cir 2001) ( "A person whose signatures was forged has never agreed to anything. Likewise with a person whose name was written on a contract by a faithless agent who lacked the authority to make a commitment. This is not a defense to enforcement, as in Prima Paint; it is a situation in which no contract came into being [.]") . This Court should concern that in this case no contract came to being..

Further, Justice Cantero, *Id 870*, analyze *Chastain*: In *Bess v. Check Express,* 294 F.3d 1298, 1304 (11th Cir 2002) , the 11th Circuit concluded that the question of the legality of the contract was for the arbitrator because the case fell "within the 'normal circumstances'......
......where the parties have signed a presumptively valid agreement to arbitrate any disputes, including those about the validity of the underlying contract. " *Id* at 1306 ( citing *Chastain v. Robinson-Humphrey Co.*, 857 F.2d 851 (11 Cir.1992) ). Justice Cantero submits, *Id* 872, that in *Bess,* the Eleventh Circuit similarly distinguished its earlier decision in *Chastain.* In *Chastain* , the plaintiff never personally signed the customer agreements at issue, and thus she contended that she was not bound by the arbitration provisions within them. 957 F.2d at 853. Now , Justice Cantero cites the U.S. Supreme Court holding in *Volt Info.* on the exactly same issue as before this Court : " The court acknowledged that " parties cannot be

17

forced to submit to arbitration if they have not agreed to do so" *Id* at 854 (citing *Volt Info. Scis.* at 478.   Judge Cantero, *Id* 872, further, analyses *Chastain*: Thus, "[u]nder normal circumstances, an arbitration provision with a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." 957 F.2d at 854. The court found the case before it to be the "rare" case in which "the existence of any agreement, and the existence of an agreement to arbitrate" was at issue. Under those facts," there [wa]s no presumptively valid general contract.

If a party did not sign the underlying contract, then the party may not have agreed to the arbitration agreement *was* at issue, and under FAA a court, not an arbitrator, should decide the question. *Id* at 856. Justice Cantero, *Id* 873, concludes: In *Bess*, 11th Circuit noted both the distinctive facts of Chastain and its narrow holding *Id at 1305*. The court explained that " the focus of the court's decision in *Chastain*.... was on the question of assent, i.e., whether the parties mutually had agreed to the contracts" and contrasted the claim before it that the differed payment contracts violate state law. This Court should consider that, as in *Chastain*, the plaintiffs, in this case clearly submitted that they have never seen and that they never assented to the forged by the defendants contract In conclusion, Justice Cantero, *Id* 873, held: :" If no contract was formed, then the arbitration agreement, which was a *part* of that contract was not formed , either.  Court must determine this treshold issue.". In the present case, the plaintiffs allege that they have never seen or signed the contract forged and uttered by the defendants in their Title Insurance Agency. They submit that they did not assent to both contract and arbitration agreement. Further, the arbitration agreement itself provides that it governs only the contract which was provided with the plaintiffs, not a contract which the

18

defendants produced and signed using forged the signatures of the plaintiffs without the plaintiffs' knowledge.

In summary, the plaintiffs did not claim legality of the forged contract before the state courts. They are not complaining of any injury caused by the state courts judgments rendered before their federal court proceedings commenced, and they are not inviting this court review and rejection of those judgments. Plaintiffs filed their original complaint in order to vindicate their rights for rescission of the forged contract and the Forensic Expert's testimony and his Forensic Report about forgery of the Promissory Note and the TILA document were successfully admitted into evidence without the defendants' objections. See pp. 8-9 of Comp.

In conclusion, the *Prima Paint* and *Buckey* are distinguishable from circumstances of this "rare" case and the decision of whether the forged contract was never signed or reviewed by the plaintiffs, should be void, is before this Court and could not be decided by the Arbitrator.

## CONCLUSION

Plaintiffs had not repaired to federal court to undo the state court judgment, and their claims are sufficiently untwined from their state claims and *Rooker-Feldman* Doctrine did not vanquish jurisdiction after state judgments. Defendants and attorney, attempt to commit fraud upon this Court. See pgs 1-2 of response. Further, they concealed that central issue of this case is about rescission of forged contract and mislead that this case is for "prepayment penalty".

They concealed, applicable to this case, the U.S. Supreme Court and Federal Courts cases, including the 11th Circuit Court's holdings. Plaintiffs' cases distinguished defendants cases. Their motion is defective. By asking this Court for an exception to be made for the United States Supreme Court's holdings in *Exxon* (Justice Scaldia) ; *Volt Info. Scis. Inc.* and *Buckey*

*Check* for an exception to be made for federal courts holdings in *Three Valleys; Chastain; Bess; Sandvik; Spharr; Brady; accord Walker; Sphere Drake Ins. Ltd; Goodman ex rel : Mickens; 898 5th Ave. S. Corp. ; Daniels; In Re Jones* and *In Re: Tomas Vic,* for an exception be made for Justice Cantero's (*Cardegna*) detail analysis of instant claim issues, defendants and their attorney are inviting this Court to treat these issues differently than is dictated by cited cases even though Fla. and Federal legislatures have not suggested it should be.

Their motion to dismiss is not supported by material facts nor by a correct application of the existing law to those facts It shows defendants' futile attempt to escape from the verdict only.

This Court should concern that counsels who appears before the Court clearly understand that motions submitted to the Court, upon which this Court relies so heavily in the discharge of its function, be truthful and fair in all respects. An attorney always carries a duty and obligation of candor. See *Addison v. Brown*, 413 So.2d 1240, 1241 (Fla.5th DCA 1982).

Plaintiffs feel strongly and justice demands that those who acted so harmfully against the plaintiffs must answer before jury for their shameful conduct.

Respectfully submitted:

_____   _____
Andrzej Madura, pro se and Anna Dolinska-Madura, pro se

**CERTIFICATE OF SERVICE**

We hereby certify, that a true and correct copy of the foregoing has been sent on March 14, by Fax & Mail and on March 15, 2007(modified pgs 1-2, 20) by US Mail to Heller& Leary, Esq..

_____   _____
Andrzej Madura, pro se and Anna Dolinska-Madura, prose
3614 57th Avenue Drive West Bradenton, Florida 34210,
Ph/Fax No.: 941-751-6646

20