**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ANDRZEJ MADURA and**
**ANNA DOLINSKA-MADURA,**

    **Plaintiffs,**

v.                                                                                           Case No.  8:06-cv-2073-T-24TBM

**COUNTRYWIDE HOME LOANS,**
**INC., and FULL SPECTRUM**
**LENDING, INC.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable Susan C. Bucklew for a Report and Recommendation on **Defendants Countrywide's and Full Spectrum's Motion to Dismiss or, Alternatively, to Compel Arbitration** (Doc. 11). By their motion, Defendants seek an Order dismissing Plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. In the alternative, Defendants seek an Order compelling Andrzej Madura to arbitrate all of his claims and dismissing his claims with prejudice. Plaintiffs' have filed a response in opposition (Doc. 22). The parties have also filed documents in support of their positions. (Docs. 12, 25, 50). A hearing on this matter was conducted on July 26, 2007.

I.

Many of the salient facts are undisputed and are taken from Plaintiffs' Complaint (Doc. 1) and judicially noticed documents within the court files maintained by the (1) Circuit Court of the Twelfth Judicial Circuit, in and for Manatee County, Florida, in *Madura v. Full Spectrum Lending, Inc.,* Case No. 02 CA 2358 Division D, (2) Second District Court of Appeal for the State of Florida in *Madura v. Full Spectrum Lending, Inc.*, Case No. 2D02-3383, *Dolinska-Madura v. Full Spectrum Lending, Inc.*, Case No. 2D05-4120, and *Madura v. Full Spectrum Lending, Inc.*, Case No. 2D06-915, (3) Florida Supreme Court in *Dolinska-Madura v. Full Spectrum Lending, Inc.*, Case No. SC06-1908, and *Madura v. Full Spectrum Lending, Inc.*, Case no. 06-999, and (4) United States Supreme Court in *Madura v. Full Spectrum Lending, Inc.*, Case No. 03-6293.[1]  (Docs. 12, 25, 50).

Andrzej Madura and his wife, Anna Dolinska-Madura, (collectively "Plaintiffs" or "Maduras") are residents of Bradenton, Florida.  Defendant, Full Spectrum Lending, Inc. ("Full Spectrum"), is a sub-prime lender.  Defendant, Countrywide Home Loans, Inc. ("Countrywide"), is an affiliate company to Full Spectrum

This suit centers around a home mortgage refinancing.  On July 26, 2000, Full Spectrum made a loan to Mr. Madura,[2] secured by the Bradenton home owned by the

---

[1] By way of Orders dated May 29, 2007, and July 7, 2007, the court granted the parties' requests for judicial notice to the extent set forth above. (Docs. 44, 61).

[2] The parties dispute that Mrs. Dolinska-Madura was a borrower on this loan.  As set forth below, on June 22, 2005, the state court found, as a matter of law, that Mrs. Dolinska-Madura did not qualify as a "borrower" under Florida law. (Doc. 12-15 at 5). Whether she was a borrower or not is of little significance to this motion.

Maduras. (Doc. 1, ¶ 5). The loan documents included an arbitration agreement signed by Mr. Madura.[3] (Doc. 12-5 at 13-14). After closing, Full Spectrum assigned the loan to Countrywide, which serviced the loan thereafter. (Doc. 1, ¶ 10).

In March 2001, the Plaintiffs contacted Countrywide and requested to pay off the mortgage loan. (Doc. 1, ¶ 11; Doc. 49 at 7, ¶ 8; 11, ¶ 10). In response, Countrywide sent Mr. Madura a "Payoff Demand Statement," which included a prepayment penalty. (Doc. 1-2 at 22). In April 2001, Plaintiffs sent Countrywide a letter disputing the inclusion of a prepayment penalty. (Doc. 1, ¶ 12). In particular, they maintained that the adjustable rate note and the Truth in Lending Act ("TILA") document did not include a prepayment penalty. (Doc. 1-2 at 18). Thereafter, Countrywide provided Plaintiffs with its copy of the promissory note, which included a prepayment penalty. A copy of the TILA document was not provided to Plaintiffs at that time. According to Plaintiffs, Mr. Madura's initials were forged on the promissory note and a loan officer's signature was fraudulently added as a witness to the closing.

On May 17, 2001, Countrywide sent Mr. Madura another Payoff Demand Statement. (Doc. 1-2 at 23). By Plaintiffs' allegations, shortly thereafter they demanded immediate rescission of the mortgage loan agreement. In July 2001, Countrywide's Vice President, Jay Laifman, responded that all loan documents appeared proper. Nonetheless, he agreed to waive the prepayment penalty. (Doc. 1-2 at 24).

---

[3]Mr. Madura signed two identical arbitration agreements. Per findings in the state-court, one was signed nine days before the loan closed and another was signed at closing. (Doc. 12-5 at 13-16).

3

In November 2001, Plaintiffs obtained from the title company a copy of the TILA document and promissory note provided to it by Countryside immediately following the closing. According to Plaintiffs, these documents also contained the same prepayment penalty and the TILA document contained both of their forged signatures.

On May 1, 2002, Plaintiffs filed a complaint against Full Spectrum and Countrywide in the Circuit Court in Manatee County, Florida ("state court"). That complaint made allegations against Full Spectrum, as the lender, and Countrywide, as it assignee, for usury, forgery, fraud, and conspiracy with allegations suggesting violations of Florida's RICO Act and the federal Real Estate Settlement Procedures Act ("RESPA") in connection with the residential mortgage loan closing on July 26, 2000. (Doc. 12-3 at 2-16). The Maduras both claimed to be borrowers on the loan. On or about May 31, 2002, Defendants moved to compel arbitration as against Mr. Madura and to dismiss the claims asserted by Mrs. Dolinska-Madura on grounds that she was not a party to the loan and thus had no stake in the controversy. (Doc. 12-5 at 2). By order dated August 5, 2002, the state court found that all Mr. Madura's claims against the Defendants were encompassed by the arbitration agreement and that the agreement was enforceable. (Doc. 12-6 at 2-4). Upon a determination that "the claims cannot be litigated judicially," the state court granted the Defendants' motion to compel arbitration and ordered Mr. Madura to bring his claims before the National Arbitration Forum if he wished to pursue them. *Id.*

All appeals from this order by Mr. Madura were denied or dismissed. Mr. Madura did not pursue his claims via arbitration. However, in or about June 2005, Mr. Madura sought leave to file an Amended Complaint. The motion was denied on January 31, 2006. (Doc. 12-

16 at 2). All appeals to the Florida District Court of Appeal of this order were denied. However, on February 27, 2007, the Florida Supreme Court accepted jurisdiction on Mr. Madura's contention that the court had jurisdiction to review the lower court's order denying reconsideration of its dismissal of his petition for certiorari. (Doc. 12-21 at 2). That matter remains pending.

On July 15, 2003, Mrs. Dolinska-Madura, filed an amended complaint against the Defendants. (Doc. 12-11 at 2). By the amended complaint, Mrs. Dolinska-Madura asserted six claims against the Defendants related to the same residential mortgage loan. In Counts I and II, she alleged violations by the Defendants of TILA, asserting that Defendants forged a TILA document subsequent to the July 26, 2000, closing to change the terms of the loan and add a prepayment penalty and forged their signatures. In Count III, she alleged that the contract entered into with the Defendants was usurious on its face and violated Florida Statutes section 687.03. In Count IV, she alleged criminal usury in violation of Florida Statutes section 687.071 in connection with two payoff statements in April and May 2001, reflecting, by her calculation, interest rates in excess of 25% per annum. In Counts V and VI, she alleged that Defendants fraudulently induced her to take the loan and subsequently forged loan documents and fraudulently charged a prepayment penalty of $5,036.84 that the Plaintiffs never agreed to at closing.

On March 30, 2004, Defendants filed a motion for summary final judgment as to all counts of Mrs. Dolinska-Madura's amended complaint. (Doc. 14-2). Mrs. Dolinska-Madura filed a cross-motion. By order dated June 22, 2005, the state court granted Defendants' motion for summary judgment as to all counts. (Doc. 12-15 at 2). Specifically, the court

concluded the TILA violations set forth in Counts I and II were time-barred under 15 U.S.C. § 1640(e). As for Counts III and IV, the court concluded as a matter of law that Mrs. Dolinska-Madura did not qualify as a "borrower" and had no standing to bring usury claims. As for Counts V and VI, the counts were dismissed on the finding that the Defendants had waived any prepayment penalty and, as a consequence, Mrs. Dolinska-Madura could demonstrate no damages, one essential element of a claim of fraud under Florida law. *Id.*

Mrs. Dolinska-Madura's appeal was denied August 25, 2006. (Doc. 12-19 at 2). Her Petition for Review to the Florida Supreme Court was dismissed October 17, 2006. (Doc. 12-20 at 2).

On November 6, 2006, the Plaintiffs brought suit in this court again suing Full Spectrum and Countrywide. Alleging the same course of fraudulent conduct by Full Spectrum and Countrywide in connection with the same mortgage loan, Plaintiffs here assert nineteen counts. In Counts I through V, VIII, XI, XIII, XIX, Plaintiffs seek rescission of the loan transaction and statutory damages for alleged violations of TILA. In Counts VI, VII, IX, X, XII, XV, XVI, and XVII, Plaintiffs seek rescission and such damages as my be awarded on state law claims for failure of contract, forgery, fraud, fraud in the inducement, usury, uttering forged bills, and violation of the Florida Communications Fraud Act.[4] (Doc. 1).

By the instant motion (Doc. 11), Defendants maintain that the court is without subject matter jurisdiction under the *Rooker-Feldman* doctrine, and they urge the appropriate remedy is dismissal with prejudice. In the alternative, should the court determine that it has

---

[4]A chart illustrating the violations/counts alleged by Plaintiffs in all proceedings is appended to this report.

6

subject matter jurisdiction with respect to the claims asserted by Mr. Madura, Defendants urge the court to enforce the arbitration agreement, order Mr. Madura to arbitrate all claims arising from the mortgage loan closing, and dismiss the action with regards to him on that basis.

## II.

### A.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is a motion challenging the subject matter jurisdiction of the court. Jurisdiction may be attacked facially or factually. *Morrison v. Amway Corp.,* 323 F.3d 920, 924 n. 5 (11th Cir. 2003). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the court assumes the allegations as true in deciding whether the complaint sufficiently alleges a basis for subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). On the other hand, factual attacks challenge the "existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* The presumption of truthfulness afforded a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach, and the court is free to weigh evidence. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). Under these circumstances, the plaintiff bears the burden of demonstrating that the court has jurisdiction in this case. *See Menchaca v.*

*Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).[5] Here, Defendants' argument presents a factual challenge to subject matter jurisdiction.

B.

The *Rooker-Feldman* doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts. *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000). The doctrine derives from two cases in which the Court held that a district court lacked subject matter jurisdiction to review and reject prior state court decisions. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). As the doctrine has been construed, it applies not only to claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment. *See Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) A federal claim is "inextricably intertwined" with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. *Id.* (citing *Siegel,* 234 F.3d at 1172). However, even if a claim is "inextricably intertwined" with the state court's judgment, the doctrine does not apply if the plaintiff did not have a reasonable opportunity to raise his federal claim in state proceedings. *Id.* (quoting *Powell v. Powell,* 80 F.3d 464, 467 (11th Cir. 1996)).

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005), the Supreme Court had occasion to revisit the doctrine. It noted that the doctrine, as variously

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

interpreted in the lower courts, had "sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Exxon Mobil*, 544 U.S. at 283. Citing the decisions in both cases, the Court held:

> The *Rooker-Feldman* doctrine . . . is confined to cases *of the kind from which the doctrine acquired its name*: cases brought by state-court losers complaining of injuries *caused by state-court judgments* rendered before the district court proceedings commenced and *inviting district court review and rejection of those judgments*. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine . . .

*Exxon Mobil*, 544 U.S. at 284 (emphasis added).[6] Thus, the *Rooker-Feldman* doctrine applies only when: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of "injuries caused by state-court judgments;" (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff "invit[es] district court review and rejection of those judgments." *Id.*; *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) (emphasizing the "narrowness" of the doctrine). After clarifying that the scope of *Rooker-Feldman* is limited to this narrow class of cases, the Court held that the doctrine did

---

[6]As the Court recounted, in *Rooker*, plaintiffs who received an adverse judgment in state court filed suit in a federal district court alleging that the adverse state-court judgment was unconstitutional and asked that the judgment be declared null and void. In *Feldman*, unsuccessful parties in the District of Columbia's highest court brought suit in federal court against the court itself. Finding that "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in the [Supreme Court]" and that both actions "essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments," the Court declared the suits were appropriately dismissed for want of subject-matter jurisdiction. *Feldman*, 460 U.S. at 283-84.

9

not bar the concurrent federal litigation brought by Exxon Mobil. In so holding, the Court explained that the doctrine also was not triggered by the entry of judgment in state court while the federal litigation was pending. *Exxon Mobil*, 544 U.S. at 292. Rather, it noted that once the state-court adjudication was complete, preclusion law would instead determine the outcome of federal claims (and preclusion is not a jurisdictional matter). *Id.* at 293. The following year, the Court again reiterated that the *Rooker-Feldman* doctrine "applies only in 'limited circumstances,' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance*, 546 U.S. at 466. Under 28 U.S.C. § 1257, the authority to review state court judgments rests exclusively with Supreme Court.

The Eleventh Circuit has long applied a four-part test for determining whether the *Rooker-Feldman* doctrine applies: (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment. *Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003) (internal citations omitted). Where a plaintiff's claims are inextricably intertwined with a state court's judgment and otherwise satisfy the four criteria set out by the Eleventh Circuit, the federal court must dismiss these claims for lack of jurisdiction. *See Goodman*, 259 F.3d at 1334 (holding plaintiffs' claim that the state court's ex parte proceeding violated their due process rights "strike [s] at the heart of the state court's proceedings and judgment" and

therefore was inextricably intertwined with the state court's judgment and barred by the *Rooker-Feldman* doctrine).

As of yet, the Eleventh Circuit has not published an opinion in which it has addressed the import of *Exxon Mobil* on its *Rooker-Feldman* jurisprudence. By way of its unpublished cases, the Eleventh Circuit has thus far declined to decide whether *Exxon Mobil* requires it to modify its four-part *Amos* test.[7] However, a review of the decisions from other circuits, post-*Exxon Mobil*, reflects a substantial narrowing of the application of *Rooker-Feldman* to cases where the plaintiff's complaint is of an injury from the state court judgment itself. *See Galibois v. Fisher*, No. 05-1576, 2006 WL 827326 (1st Cir. Mar. 31, 2006)

---

[7]In the majority of post-*Exxon Mobil* cases in which the Eleventh Circuit has addressed *Rooker-Feldman*, the Court has held that jurisdiction is precluded under both the *Amos* factors and *Exxon Mobil*. *See Alyshah v. United States*, Nos. 06-15452, 06-15512, 2007 WL 2110718 (11th Cir. July 24, 2007); *Burt Dev. Co. v. Bd. of Comm'rs of Lee County, Ga.*, No. 06-15421, 2007 WL 1339856 (11th Cir. May 8, 2007); *Morris v. Wroble*, No. 06-13809, 2006 WL 3326752 (11th Cir. Nov. 16, 2006); *Force v. Kolhage*, No. 06-10679, 2006 WL 2329365 (11th Cir. Aug. 11, 2006); *Herskowitz v. Reid*, No. 05-10734, 2006 WL 1490165 (11th Cir. May 31, 2006); *Mickens v. Tenth Judicial Circuit*, No. 05-15518, 2006 WL 1388735 (11th Cir. May 22, 2006); *Ransom v. Georgia*, No. 05-16914, 2006 WL 1313171 (May 12, 2006); *May v. Capote*, No. 05-11941, 2005 WL 2203148 (11th Cir. Sept. 12, 2005); *Indus. Commc'ns & Elecs. Inc. v. Monroe County*, No. 03-12233, 2005 WL 1253881 (11th Cir. May 27, 2005); *see also Stack v. Mason & Assocs.*, No. 06-15740, 2007 WL 2415177 (11th Cir. Aug. 24, 2007); *Torchia v. Fla. Office of Fin. Insts. & Secs. Regulation*, No. 05-15287, 2006 WL 460907 (11th Cir. Feb. 27, 2006); *but see Ware v. FleetBoston Fin. Corp.*, No. 05-13565, 2006 WL 1168793 (11th Cir. May 2, 2006) (*Rooker-Feldman* did not apply because FleetBoston was invoking district court's original jurisdiction over case and was not appealing state court judgment); *Sophocleus v. Ala. Dep't of Transp.,* No. 04-10834, 2005 WL 3822871 (11th Cir. Dec. 14, 2005) (remanding to district court for further consideration of independent claim in light of *Exxon Mobil*); *Artistic Entm't, Inc. v. City of Warner Robbins*, No. 04-12198, 2005 WL 1189627 (11th Cir. May 20, 2005) (*Rooker-Feldman* did not apply because federal litigation was filed first and ran parallel to state court action). None of these cases are binding. *See United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 n. 4 (11th Cir. 2004) (providing that unpublished opinions are not considered binding but may be cited as persuasive authority); 11th Cir. R. 36-2 (same).

(unpublished); *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 85 (2d Cir. 2005);[8] *Davani v. Va. Dep't of Transp.,* 434 F.3d 712, 719 (4th Cir. 2006); *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006); *Bolden v. City of Topeka*, 441 F.3d 1129, 1141 (10th Cir. 2006). Given that the Supreme Court in *Exxon Mobil* did not specifically address the "inextricably intertwined" language from *Feldman*, the Fourth, Sixth, and Tenth Circuits have expressly held that such language does not create an additional legal test for determining when claims challenging a state-court decision are barred. *See Davani*, 434 F.3d at 719; *McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006); *Bolden*, 441 F.3d at 1141.

### III.

### A.

In this case, Defendants, without addressing the import of *Exxon Mobil* and *Lance*, argue that under the Eleventh Circuit's standard, there is a violation of *Rooker-Feldman* and the court is without jurisdiction. The conclusion is perhaps supportable on the basis of the circuit's pre-*Exxon Mobil* decisions. It is not the correct one after the course-correction in *Exxon Mobil*. After *Exxon Mobil*, this court is called upon to examine only whether the Maduras seek redress for an injury caused by the state-court decision itself, not whether the

---

[8]The Second Circuit, in differentiating between injury caused by the state-court judgment versus injury caused by the defendant(s), provided an example: "Suppose a plaintiff sues his employer in state court for violating . . . anti-discrimination law and . . . loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the [initial] discrimination." *Hoblock*, 422 F.3d at 87-88.

suit seeks to relitigate claims that were brought or could have been brought in the state court. Here, they do not complain of the state-court judgment itself. As so artfully set forth by the district judge in *Gamble v. PinnOak Res., LLC*, __ F. Supp. 2d ___, 2007 WL 2493486 (N.D. Ala. Aug. 31, 2007), the reasoning articulated by the other circuits addressing the scope of *Rooker-Feldman* after *Exxon Mobil* is persuasive. *See id.* at *4-6. In accordance with the Court's holding in *Exxon Mobil*, the Plaintiffs' claims here do not fall within the category of claims to which *Rooker-Feldman* applies. Mr. Madura is a "state-court loser" only in the sense that he was forced to arbitrate his claims (and chose not to do so). Mrs. Dolinska-Madura is a "state-court loser," however, the injuries she (and her husband) complain of allegedly result from the Defendants' actions, and are not injuries caused by the state-court judgment itself. As the doctrine is now construed by the Supreme Court, *Rooker-Feldman* does not divest this court of subject-matter jurisdiction over Plaintiffs' case.[9]

To the extent that Defendants urge the court to employ the Eleventh Circuit's pre-*Exxon Mobil* standard, I disagree that it is necessary or appropriate to do so. The Eleventh Circuit has indicated that it likely will revisit its four-part test set forth in *Amos* once it is presented with the case calling for it to do so. *See Morris*, 2006 WL 3326752, *2 n.4. While I fully respect that the court has neither overruled nor modified its Amos standard, this court

---

[9]As set forth below, the court should conclude that all Mr. Madura's claims are subject to the arbitration agreement and the complaint should be dismissed as against him. Although the matter cannot be reached in the present posture of the case, it is worth noting that on the conclusion above, Mrs. Dolinska-Madura's claims are appropriately addressed under principles of preclusion law and that it appears likely that all her claims may be barred by reason of the claim and issue-preclusive effects of the state court judgment.

is not called upon to weigh in on that matter on this motion.  Here, the court must decide simply whether it does or does not have subject-matter jurisdiction, and I conclude that it does.  The court has jurisdiction under 28 U.S.C. § 1331 over the multiple TILA claims and supplemental jurisdiction pursuant to § 1367 over the related state law claims.  The remedies sought are for injuries caused by the Defendants, not the state-court judgment, and *Rooker-Feldman* does not bar the suit in this court.

B.

Defendants' urge in the alternative for the court to compel Mr. Madura to submit all of his claims to arbitration in light of the arbitration agreement executed in connection with the mortgage loan at issue and dismiss his instant suit.  In response, Mr. Madura argues that the arbitration agreement he executed accompanied the original note and TILA documents ("the first contract" or the contract without a prepayment penalty).  Because the Defendants allegedly destroyed that "first contract" and forged his signature and initials on a second note and TILA documents ("the second contract"), Mr. Madura contends that Defendants breached the "first contract" and therefore he cannot be held to the arbitration agreement signed in connection therewith.  In other words, Mr. Madura argues that the arbitration agreements he signed pertain to the note and TILA documents signed at closing and not the "forged and concealed" note and TILA documents that included the prepayment penalty and which Defendants filed with the title company.

Upon consideration, I find that Mr. Madura is bound by the arbitration agreement executed in connection with the mortgage loan of July 2000.  It is undisputed that Mr. Madura signed the arbitration agreement in connection with that mortgage loan.  Aside from his

14

urging that he is not bound by the arbitration agreement because Defendants "breached" the mortgage-loan contract by fraud and forgery, Mr. Madura does not otherwise challenge its validity or whether it is enforceable. Notably, the arbitration agreement states that all claims related to "the credit transaction"[10] shall be resolved by binding arbitration in accordance with the Federal Arbitration Act. (Doc. 12-5 at 13). As Defendants point out, claims are defined broadly.[11] *See id.* For example, claims involving the TILA, the RESPA, usury laws, and fraud or misrepresentation are specifically governed by the arbitration agreement. *See id.* By signing this agreement, Mr. Madura agreed that arbitration was his exclusive remedy for all claims covered by the agreement and he "knowingly and voluntarily" waived his rights to pursue remedies in court. *Id.* at 14. In short, I find that the arbitration agreement encompasses all of Mr. Madura's claims raised in this court, including any alleged fraud and/or forgery committed thereafter, and the agreement should be enforced.[12]

---

[10]"'Credit Transaction' means the obligation or proposed obligation, identified by the above-referenced Loan Number and the notes, security agreements, application and other related documents, and any modification, extension or forbearance of the obligation." (Doc. 12-5 at 13).

[11]The agreement states that "'claim' means any case, controversy, dispute, lawsuit, or claim now or hereafter existing between You and Us. A Claims includes, without limitation, anything arising out of or relating to: This Agreement; The Credit Transaction; . . . Any documents or instruments that information about the Credit Transaction, . . . Any act or omission concerning any Claim." (Doc. 12-5 at 13).

[12]The case law relied upon by Mr. Madura is factually inapposite.

15

IV.

Accordingly, for the foregoing reasons, it is RECOMMENDED that **Defendants Countrywide's and Full Spectrum's Motion to Dismiss or, Alternatively, to Compel Arbitration** (Doc. 11) be GRANTED in part and DENIED in part.  It is recommended that the court deny the motion to the extent it urges dismissal for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.  It is recommended that the court grant the motion to the extent it seeks to compel Mr. Madura to arbitrate all of his claims and dismiss *his* claims with prejudice.

                                           Respectfully submitted on this
                                           18th day of October 2007

                                           THOMAS B. McCOUN III
                                           UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Susan C. Bucklew, United States District Court Judge
Counsel of Record


## APPENDIX

|  | **INITIAL STATE COURT COMPLAINT[13] by Mr. and Mrs Madura alleges:** | **AMENDED STATE COURT COMPLAINT by Mrs. Madura alleges:** | **FEDERAL COMPLAINT by Mr. & Mrs. Madura alleges:** |
|---|---|---|---|
| **COUNT I** | state law violations citing Fla. Stat. § 687.02 (usury - usurious contracts), Fla. Stat. § 687.03 (usury - unlawful rates of interest), Fla. Stat. § 687.04 (usury-line of credit), Fla. Stat. § 687.071 (criminal usury, loan sharking, shylocking), Fla. Stat. § 831.01 (forgery), Fla. Stat. § 831.02 (uttering forged instrument), Fla. Stat. § 895.03(1)-(4) (conspiracy & racketeering) and a violation of RESPA. | TILA violation, citing 15 U.S.C. § 1639(b)(A) and alleging forged TILA document to change terms of loan and add prepayment penalty. Count sought damages. | TILA violation, citing 15 U.S.C. §1639 and alleging forgery of Note and TILA document to change terms of loan and add prepayment penalty; and failure to disclose; inadequate notice of right to rescind. Count seeks rescission of loan transaction under 15 U.S.C § 1635 and statutory damages under 15U.S.C. §1640. |
| **COUNT II** |  | TILA violation, citing 15 U.S.C. § 1631 and alleging forgery of borrowers' signature and uttering the forged TILA document. Count sought damages. | TILA violation, citing 15 U.S.C. § 1639 and alleging wrongful inclusion of prepayment penalty and failure to disclose. Count also seeks rescission and statutory damages under TILA. |
| **COUNT III** |  | State law claim for usury citing Fla. Stat. § 687.03 and alleging unlawful rates of interest on Note and Rider. Count sought damages | TILA violation, alleging failure to honor borrowers' 5/23/01 notice of rescission. Count also seeks rescission and statutory damages under TILA. |
| **COUNT IV** |  | State law claim for criminal usury citing Fla. Stat. § 687.071 and alleging criminal usury, because interest exacted in payoff statements in April and May 2001 exceeded 25% per annum. Count sought damages. | TILA violation, alleging failure to honor borrowers' 12//23/04 rescission of loan. Count also seeks rescission and statutory damages under TILA. |

---

[13] The allegations in this complaint are unnumbered and are listed as counts for ease of reference.

| | | | |
|---|---|---|---|
| **COUNT V** | | **State law claim for fraud in the inducement and forgery of borrowers' signature. Count sought damages.** | **TILA violation, citing 15 U.S.C § 1639 and alleging misdisclosure of monthly payment amount. Count also seeks rescission and statutory damages.** |
| **COUNT VI** | | **State law claim for fraud by chargiing prepayment penalty never agreed to. Count sought damages.** | **Apparent state law claim for failure of contract. Count claims right of rescission under TILA.** |
| **COUNT VII** | | | **Apparent state law claim alleging forgery and fraud on TILA documents and Promissory Note and nondisclosure of same. Count seeks rescission of loan transaction.** |
| **COUNT VIII** | | | **TILA violation, citing 15 U.S.C § 1639 and alleging failure to disclose forgery of TILA document and Promissory Note. Count also seeks rescission and statutory damages under TILA.** |
| **COUNT IX** | | | **State law claim for fraud in the inducement (citing Fla. Stat. § 817.54). Count seeks rescission of the loan transaction and damages.** |
| **COUNT X** | | | **State law claim for criminal usury (citing Fla. Stat. § 687.071.) Count seeks forfeiture of principal and interest and rescission of contract.** |
| **COUNT X1** | | | **TILA violation, citing 15 U.S.C § 1639and alleging nondisclosure of the amount of the maximum monthly payment. Count also seeks rescission and statutory damages under TILA.** |
| **COUNT XII** | | | **State law claim for usury (citing Fla. Stats. §§ 687.03, 687.04). Count seeks statutory damages.** |

| | | | |
|---|---|---|---|
| **COUNT XIII** | | | **TILA violation, citing 15 U.S.C § 1639and alleging nondisclosure of correct interest rate and correct calculation of changes. Count also seeks rescission and statutory damages under TILA.** |
| **COUNT XIV** | | | **TILA violation, citing 15 U.S.C § 1639and alleging improper change in terms of credit and nondisclosure of "new" terms of credit. Count also seeks rescission and statutory damages under TILA.** |
| **COUNT XV** | | | **State law claim for uttering forged loan documents and bills (citing Fla. Stats. §§ 831.02and 831.09). Count seeks rescission and damages.** |
| **COUNT XVI** | | | **State law claim for fraud by destroying original loan documents and replacing them with false documents. Count seeks rescission and damages.** |
| **COUNT XVII** | | | **State law claim alleging a scheme to defraud in violation of Florida Communications Fraud Act (citing Fla. Stat. § 817.034). Count seeks damages.** |
| **COUNT XVIII** | | | **TILA violation, citing 15 U.S.C § 1639(a)(1)(A) and alleging failure to make specific disclosures required by this section. Count also seeks rescission and statutory damages under TILA.** |

| **COUNT XIX** | | | **TILA violation, citing 15 U.S.C § § 1639(a)(1)(B) and alleging failure to make specific disclosure required by this section. Count also seeks rescission and statutory damages under TILA.** |
|---|---|---|---|