**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ANNA DOLINSKA-MADURA,**

          **Plaintiff,**

**v.**                                   **Case No.  8:06-cv-2073-T-24TBM**

**COUNTRYWIDE HOME LOANS,
INC., and FULL SPECTRUM
LENDING, INC.,**

          **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before the court on referral by the Honorable Susan C. Bucklew

for a Report and Recommendation on **Full Spectrum's and Countrywide's Motion for**

**Summary Final Judgment Against Mrs. Madura and Incorporated Memorandum of**

**Law** (Doc. 175).  Anna Dolinska Madura ("Mrs. Madura" or "Plaintiff") has filed a response

in opposition (Doc. 189) and supplements thereto (Docs. 202-03).  The parties have filed

affidavits, excerpts of depositions, and other documentary evidence in support of their

positions.

I.

Andrzej Madura and his wife, Anna Dolinska-Madura, (collectively the "Maduras")

are residents of Bradenton, Florida.  Defendant, Full Spectrum Lending, Inc. ("Full

Spectrum") is a lender.  Defendant, Countrywide Home Loans, Inc. ("Countrywide"), is an

affiliate company to Full Spectrum and the assignee on the home loan in dispute.

This dispute centers around a home mortgage refinance by the Maduras.  Suffice it to

say at the outset that the allegations of forgery, fraud, concealment, and other misconduct at

the hands of the Defendants are significantly disputed.  However, the chronology of the

pertinent events from and after the closing of this loan and the exhibits documenting the same

are essentially indisputable and useful to resolution of the case.[1]

On July 26, 2000, Full Spectrum made a loan of $87,750.00 to the Maduras, secured

by their principal residence.  Although there is a dispute over who signed what, an Adjustable

Rate Note ("note") and a Truth in Lending Act ("TILA") disclosure were executed at the

closing.[2]  These documents reflect that there was no prepayment penalty.  Although denied by

the Defendants, the Maduras maintain that they both signed the TILA disclosure statement

and the note.  (Doc. 1, ¶¶ 5-7).  They further maintain that after closing, Defendants destroyed

or concealed the original copies of these loan documents and prepared a new note (that does

not contain Mrs. Madura's signature) and a TILA disclosure with forged signatures, which

contained a prepayment penalty never agreed to by the Maduras.[3]  These documents were

transmitted to the title company after closing.  *Id.* at ¶ 8.

---

[1]The chronology is drawn from the Complaint (Doc. 1) and by reference to various
exhibits filed with the court, as well as certain original or copies of affidavits filed by the
Maduras.  *See* (Docs. 12, 25, 49, 87, 189, 202, 203).

[2]According to the Complaint, the note referenced by this allegation is found at exhibit
K1-c to the Complaint and the TILA disclosure is found at exhibit K1-d .

[3]The allegedly forged note and the TILA disclosure are found at exhibits Q-1 and Q-2
to the Complaint.

On July 31, 2000, Full Spectrum assigned the loan to Countrywide, which serviced the loan thereafter.  *Id.* at ¶ 10.

In March 2001, the Maduras contacted Countrywide by telephone and requested the pay-off amount on the mortgage loan.  In response, Countrywide gave a pay-off figure which included a prepayment penalty of $6,150.00.  (Doc. 1, ¶ 11).  On March 15, 2001, the Maduras spoke with Mr. Cox, a loan officer with Countrywide, to inquire of the prepayment penalty.  At his request, the Maduras faxed him copies of the note (Ex. K1-c) and TILA disclosure (Ex. K1-d).  *Id.* at ¶ 12.

On April 21, 2001, Countrywide sent Mr. Madura a "Payoff Demand Statement," which included a prepayment penalty of $5,036.84.[4]  *Id.* at ¶ 13.  On April 25, 2001, Mr. Madura sent Countrywide a certified letter indicating that the information given by Countrywide about the prepayment penalty was inconsistent with the loan documents they signed.[5]  *Id.* at ¶ 12.  When the Maduras did not receive a response, they demanded copies of the note and TILA disclosure.  In return, another representative of Countrywide, Mrs. Green, asked for copies of the documents they signed at closing and they again forwarded the note (Ex. K-1c) and TILA disclosure (Ex. K-1d).  *Id.* at ¶ 14.

On May 10, 2001, Mrs. Green provided a copy of the promissory note via facsimile,[6] but did not provide a copy of the TILA disclosure.  *Id.* at ¶ 15.  This copy appears to reflect different terms imposing a prepayment penalty on page two.  By Mrs. Madura's allegations,

[4]A copy of this statement is exhibit G to the Complaint.

[5]A copy of this letter is exhibit E to the Complaint.

[6]A copy of this note is exhibit "Q1-fax" to the Complaint.

3

the note contained the forged initials of Mr. Madura on page two.  Thereafter, Plaintiff maintains that she again made several requests for a copy of the TILA disclosure and demanded an investigation.  *Id.* at ¶ 16.  Instead, on May 17, 2001, Countrywide sent Mr. Madura another Payoff Demand Statement.[7]  *Id.* at ¶ 17.

On May 23, 2001, the Maduras sent Countrywide a certified letter demanding an investigation of the forgery of the loan documents.  After outlining a chronology of events, they requested, among other things, that the TILA disclosure be forwarded to them, the "forged mortgage agreement be invalidated," and that the company begin its own investigation of the falsification of documents.  *Id.* at ¶ 18.  Thereafter, Countrywide failed to forward the TILA disclosure and ignored the demand to invalidate the agreement.  *Id.*

By way of letters dated July 17, 2001, and July 27, 2001, Jay S. Laifman, Countrywide's vice president and senior counsel, informed the Maduras that while he found the appropriate disclosures were made and there were no apparent irregularities in the loan documents, Countrywide would waive the prepayment penalty.[8]  *Id.* at ¶ 22.

Plaintiffs' telephonic demands on Full Spectrum in May and June 2001 for the TILA disclosure and the locations of persons involved with the closing were denied.  *Id.* at ¶ 19.  Plaintiff alleges that it was not until February 15, 2002, that Full Spectrum provided a copy (as opposed to a faxed copy) of the (forged) note.  *Id.* at ¶ 25.

---

[7]A copy of this statement is exhibit H to the Complaint.

[8]Copies of these letters are exhibits I and J to the Complaint.

In November 2001, the Maduras obtained copies of the loan documents from the title company, including the allegedly forged TILA disclosure (Ex. Q-2) and note (Ex. Q-1).[9] (Doc. 1 at ¶ 23). Both the Maduras' signatures appear on the TILA disclosure, but only Mr. Madura's signature appears on the note.

Also in November 2001, the Maduras retained a forensic document examiner to review the documents. By his report, their dated signatures on the TILA disclosure (Ex. Q-2) and Mr. Madura's initials on page 2 of the note (Ex. Q-1) are not genuine.[10] (Doc. 1 at ¶ 24).

On March 8, 2002, and April 29, 2002, then counsel for Mr. Madura sent letters to Countrywide demanding a copy of the TILA disclosure and information about what action the company had taken concerning the forgery. A copy of the expert's report was included. (Doc. 1 at ¶ 25a).[11]

On May 1, 2002, the Maduras filed a complaint against Full Spectrum and Countrywide in the Circuit Court in Manatee County, Florida ("state court").[12] (Doc. 1 at ¶ 27). In sum, both Maduras claimed to be borrowers on the loan. The allegations suggest claims for usury, forgery, fraud, and conspiracy with allegations suggesting violations of Florida's RICO Act and the federal Real Estate Settlement Procedures Act ("RESPA"), all in

---

[9]Plaintiff alleges that the title company received these documents from a representative of Countrywide the day following the closing. In proof, Plaintiff proffers letters from the title company. *See* Compl. (Doc. 1, Exs. C, D). The letters are not that specific.

[10]A copy of this report is exhibit S to the Complaint.

[11]Copies of these letters are exhibits L and M to the Complaint.

[12]A copy of this original complaint is exhibit N to the Complaint. *See also* (Doc. 12-2-3).

connection with the residential mortgage loan closing on July 26, 2000.  The complaint

sought damages, punitive damages, fees and costs.  On or about May 31, 2002, Defendants

moved to compel arbitration as against Mr. Madura and to dismiss the claims asserted by Mrs.

Madura on grounds that she was not a party to the loan and thus had no stake in the

controversy.  (Doc. 12-5).

By order dated August 5, 2002, the state court found that all Mr. Madura's claims

against the Defendants were encompassed by the arbitration agreement and that the

agreement was enforceable.  (Docs. 1 at ¶ 28; 12-6).  Upon a determination that "the claims

cannot be litigated judicially," the state court granted the Defendants' motion to compel

arbitration and ordered Mr. Madura to bring his claims before the National Arbitration Forum

if he wished to pursue them.  *Id.*  All Mr. Madura's appeals were denied.  (Docs. 12-7-10, 13).

On July 15, 2003, Mrs. Madura filed an amended six-count complaint against the

Defendants.  (Doc. 1 at ¶ 29).  In Counts I and II, she alleged that the Defendants violated the

TILA by forging a TILA disclosure after the July 26, 2000, closing to change the terms of the

loan and add a prepayment penalty and forged their signatures before uttering it into the

public record.  In Count III, she alleged that the note and adjustable rate rider signed by them

charged usurious interest rates in violation of Florida Statutes § 687.03.  In Count IV, she

alleged criminal usury in violation § 687.071 of the Florida Statutes in connection with the

two payoff demand statements in April and May 2001, reflecting, by her calculation, interest

rates in excess of 25% per annum.  In Count V, she alleged that Defendants fraudulently

induced her to take the loan by representing that there was no prepayment penalty and in

Count VI, she alleged fraud on the basis of the Defendants charging a prepayment penalty of

6

$5,036.84 that the Plaintiffs never agreed to at closing.  She again sought only monetary damages, fees and costs.[13]

On March 30, 2004, Defendants filed a motion for summary judgment as to all counts of Mrs. Madura's amended complaint.  (Doc. 14-2).  Mrs. Madura purportedly filed a cross-motion.

In December 2004, the Maduras sent a Second Notice of Rescission to Defendants via counsel because "of the defendants' failure to honor their May 23, 2001, request of rescission."  (Doc. 1, ¶ 31).[14]

On June 22, 2005, the state court granted Defendants' motion for summary judgment as to all counts.  (Doc. 12-15).  Specifically, the court concluded the TILA violations set forth in Counts I and II were time-barred under 15 U.S.C. § 1640(e).  As for Counts III and IV, the court concluded as a matter of law that Mrs. Madura did not qualify as a "borrower" and had no standing to bring usury claims.  As for Counts V and VI, the counts were dismissed on the finding that the Defendants had waived any prepayment penalty and, as a consequence, Mrs. Madura could not demonstrate damages, an essential element of a claim of fraud under Florida law.  *Id.*  Mrs. Madura's appeal was denied August 25, 2006.[15]  (Doc. 12-18, 19).  Her

---

[13]A copy of the Amended Complaint is found at exhibit O to the Complaint.  *See also* (Doc. 12-11).

[14]A copy of this letter is exhibit R to the Complaint.

[15]Mrs. Madura alleged on appeal that the trial court erred by: (1) entering summary judgment even though she was prohibited from engaging in meaningful discovery; (2) finding that the TILA counts were time barred; (3) deciding the borrower issue because the facts were disputed; (4) concluding she did not have damages; (5) granting a motion to stay discovery that was not noticed and denying her motion to compel; and (6) denying her motion to plead punitive damages.  (Doc. 25, Ex. 5).

petition for review to the Florida Supreme Court was dismissed on October 17, 2006.[16]  (Doc. 12-20).

On November 6, 2006, the Maduras brought suit in this court again suing Full Spectrum and Countrywide.  Alleging the same course of fraudulent conduct by Full Spectrum and Countrywide in connection with the same mortgage loan, they assert nineteen counts.  In Counts I through V, VIII, XI, XIII, XIX, they seek rescission of the loan transaction and statutory damages for alleged violations of the TILA.  In Counts VI, VII, IX, X, XII, XV, XVI, and XVII, Plaintiffs seek rescission and such damages as may be awarded on state law claims for failure of contract, forgery, fraud, fraud in the inducement, usury, uttering forged bills, and violation of the Florida Communications Fraud Act.[17]  (Doc. 1).

By Order of December 7, 2007, Defendants' Motion to Dismiss or, Alternatively, to Compel Arbitration (Doc. 11) was granted in part; Mr. Madura's claims were dismissed and he was ordered to bring his claims before the National Arbitration forum.  As to Mrs. Madura, the court denied the motion.  (Doc. 106).

II.

A.

By the instant motion (Doc. 175), Defendants seek summary judgment urging that all Plaintiff's claims are precluded because they have been or should have been raised in the state

---

[16]As set forth by Mrs. Madura, the issues presented to the Florida Supreme Court addressed whether her forgery claim constituted a TILA violation, the TILA claims were time barred, and the trial court utilized the correct definition of borrower.  (Doc. 25, Ex. 6).

[17]A chart illustrating the violations/counts alleged by Plaintiffs in all proceedings is appended to this report.

court.  In addition to raising issue and claim preclusion, Defendants maintain that Plaintiff's claims are time-barred, she lacks standing to sue as a borrower, her claims are moot in light of Countrywide's waiver of any prepayment penalty, and many of her claims fail to state a cause of action.  *Id.*  As Defendants view Plaintiff's claims, they all rest on the same factual premise, namely, that Defendants altered loan documents after closing to add a prepayment penalty to the home loan and delete Plaintiff's name from documents so that she was not a borrower.  Since the claims in this court arise from the same nucleus of operative facts as the claims raised in state court and Plaintiff's claims in state court were adjudicated on the merits in their favor, Defendants urge that the doctrines of issue and claim preclusion bar her efforts to relitigate these claims in this court.[18]  Since all claims arise from the July 26, 2000, closing, the claims brought in in this court in 2006 are timed-barred under the applicable limitations periods.  Consistent with the rulings of the state court judge, Defendants further contend that Plaintiff was not a borrower on this loan and has no standing to bring her fraud and usury allegations.  In any event, since Countrywide waived any prepayment penalty shortly after the matter was raised by the Maduras, Defendants urge Plaintiff cannot prove up an essential element (damages) of her claims for fraud and forgery.

In response, Plaintiff has filed a sworn memorandum in which she initially urges that Defendants have misrepresented significant facts before the state court and this court and she

---

[18]In support, Defendants cite *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183 (11th Cir. 2003); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265 (11th Cir. 2002); *In re Piper Aircraft Corp.*, 244 F.3d 1289 (11th Cir. 2001); *TDY Indus., Inc. v. Kaiser Aerospace & Elecs. Corp.*, 534 U.S. 827 (2001); and *S.E. Fla. Cable, Inc. v. Martin County*, 173 F.3d 1332 (11th Cir. 1999).

seeks to demonstrate a number of disputed facts which she contends preclude the entry of summary judgment.  (Doc. 189 at 1-9).  As for her legal arguments, the same are addressed herein below.

B.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court may look to "the pleadings, the discovery and disclosure materials on file, and any affidavits" in determining whether summary judgment is appropriate.  Fed. R. Civ. P. 56(c).  The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 324; *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir. 1994).  The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception.  *Perkins v. Sch. Bd. of Pinellas County*, 902 F. Supp. 1503, 1505 (M.D. Fla. 1995).  It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e)(2).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations."  *Hairston*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

10

242 (1986)).  The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried.  *Hairston*, 9 F.3d at 921; *see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997).  All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

## C.

The Truth-in-Lending Act was enacted to protect consumers against the uninformed use of credit by requiring meaningful disclosure of credit terms, and to protect against inaccurate and unfair credit billing and credit card practices.  15 U.S.C. §§ 1601-65b; *see Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 559 (1980) (stating that the TILA's purpose is "promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers").  As such, the TILA requires creditors to provide consumers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights," including the right of rescission.  *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  The statute also requires the disclosure of prepayment conditions.  15 U.S.C. § 1638; *see also* 12 C.F.R. § 226.18.  The TILA is a remedial statute and must be construed liberally in favor of the consumer.  *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004).

The remedial goals of TILA are achieved by a system of strict liability in favor of consumers when mandated disclosures have not been made.  *See* 15 U.S.C. § 1640(a).  Failure to make a required disclosure and satisfy the requirements of the TILA may subject a lender

to statutory and actual damages that are traceable to the lender's failure.  *See id.* at

§ 1640(a)(1)-(2)(A); *Beach,* 523 U.S. at 412.  Additionally, the TILA gives the consumer the

right to rescind a transaction that results in the creditor taking a security interest in the

consumer's principal dwelling.  15 U.S.C. § 1635(a).  The consumer has an absolute right to

rescind the agreement for three business days following the closing of the transaction.  *Id.*

Rescission may be extended for up to three years if the creditor fails to make all material

disclosures to the borrower as required by the TILA.  *Id.* at § 1635(f); 12 C.F.R. Pt. 226.23(a).

 A distinct cause of action for rescission exists when there is a violation of certain of TILA's

disclosure requirements.  *See* 15 U.S.C. § 1635.

        In enacting the TILA, Congress delegated authority to the Federal Reserve Board of

Governors to promulgate implementing regulations and interpretations known as Regulation

Z.  *See* 15 U.S.C. § 1604(a).  These regulations, which are located at 12 C.F.R. Part 226, may

be relied upon by creditors for protection from any civil or criminal liability.  *See Household*

*Credit Servs., Inc. v. Pfennig,* 541 U.S. 232, 238 (2004).

        The Home Ownership and Equity Protection Act ("HOEPA"), an amendment to the

TILA, requires lenders to make additional disclosures to borrowers of high-cost or high-rate

loans.  *See* 15 U.S.C. § 1639.[19]  If a mortgage loan satisfies the requirements set forth in this

---

        [19]To qualify as a HOEPA loan, the loan must be a consumer credit transaction that is
secured by the consumer's principal dwelling, other than a residential mortgage transaction
(as otherwise defined under TILA), a reverse mortgage transaction, or a transaction under an
open end credit plan, and must further meet one of two requirements:  the annual percentage
rate at consummation of the transaction will exceed by more than ten percentage points the
yield on Treasury securities having comparable periods of maturity on the fifteenth day of the
month immediately preceding the month in which the application for the extension of credit is
received by the creditor; or the total points and fees payable by the consumer at or before

section, it is considered a HOEPA loan under 15 U.S.C. § 1602(aa) and is subject to the requirements of section 1639 as well as other TILA requirements.[20]

## D.

By reason of the Constitution's Full Faith and Credit Clause, a federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984) (citing *Allen v. McCurry*, 449 U.S. 90 (1980)). The preclusive effects of a prior adjudication of claims appear in two forms: issue preclusion, commonly referred to as collateral estoppel, and claim preclusion, referred to as res judicata. *Migra,* 465 U.S. at 77 n. 1. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. . . . Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated because of a determination that it should have been advanced in an earlier suit." *Id.* Both forms of preclusion appear implicated in this case.

In considering whether to give preclusive effect to state court judgments under the doctrines of res judicata or collateral estoppel, federal courts apply that state's law of preclusion. *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006) (res judicata); *Agripost, Inc. v. Miami-Dade County,* 195 F.3d 1225, 1229 n.7 (11th Cir. 1999)

---

closing will exceed the greater of eight percent of the total loan amount or $400.00. 15 U.S.C. § 1602(a)(a)(1).

[20]Plaintiff alleges that the loan at issue is subject to the requirements of § 1639. This is not expressly disputed and, given the resolution proposed below, it is unnecessary to determine whether the loan falls under the HOEPA.

(collateral estoppel).  Under Florida law, issue preclusion bars the relitigation of issues that have already been decided through previous litigation "only if there are identical parties and issues in both lawsuits" and the same issues are presented again for decision.  *Cook v. State*, 921 So.2d 631, 634 (Fla. Dist. Ct. App. 2005); *W. Point Constr. Co. v. Fid. & Deposit Co. of Md.*, 515 So.2d 1374, 1376 (Fla. Dist. Ct. App. 1987).  In particular, the following factors must be present:  (1) there must be an issue identical to one presented in the prior proceeding; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have actually been litigated.  *Cook*, 921 So.2d at 634 (citing *Goodman v. Aldrich & Ramsey Enters.*, 804 so. 2d 544, 546-47 (Fla. Dist. Ct. App. 2002)).  Under Florida law, res judicata applies when there is "[a] judgment on the merits rendered in a former suit between the same parties, . . . upon the same cause of action, by a court of competent jurisdiction . . ."  *Fla. Dep't of Transp. v. Juliano*, 801 So.2d 101, 105 (Fla. 2001) (quoting *Kimbrell v. Paige*, 448 So.2d 1009, 1012 (Fla. 1984)).  Res judicata bars relitigation in a subsequent cause of action of claims raised and claims that could have been raised.  *Juliano*, 801 So.2d at 105 (citing *Youngblood v. Taylor*, 89 So.2d 503, 505 (Fla. 1956)).

### III.

### A.

Addressing the time bar and statute of limitations issues first, Defendants argue that all of Plaintiff's TILA claims, including those for rescission, are time-barred.  Under the

14

pertinent statutory authority and governing case law, Defendants urge that a claim for

damages for alleged disclosure violations under the TILA must be brought within one year of

the credit transaction at issue.  Thus, in this case, Defendants assert that the limitations period

for Plaintiff's claims for damages under the TILA expired on July 26, 2001, one year after the

loan closed.  Defendants note that Plaintiff did not file suit in state court until May 2002 and

did not allege TILA claims in state court until July 2003.  Defendants acknowledge that the

TILA is subject to equitable tolling, but they urge that such cannot save Plaintiff's claims

because Plaintiff discovered the alleged fraud in March 2001 and there is no evidence in this

case suggesting inequitable circumstances.  As for the TILA claims for which Plaintiff seeks

rescission, Defendants assert those are likewise time barred because the right to rescission

expired three days after the July 26, 2000, closing, or three years after the same, July 26,

2003, if there was a TILA violation to extend the period.  Because Plaintiff did not allege her

TILA claims for rescission until she brought suit in this court in November 2006, her claims

for such are time barred.  Lastly, with respect to Plaintiff's TILA claim for Defendants'

alleged failure to honor her request for rescission by way of the May 23, 2001, letter,

Defendants argue the claim is likewise time barred because she would have either had to

bring suit before the extended three-year right expired or within one year and twenty days of

the alleged failure to honor the request.  (Doc. 175 at 12-16).

Plaintiff responds that her TILA claims are not time-barred because (1) she sent a

letter to Defendants on May 23, 2001, providing notice of rescission pursuant to Regulation

Z, 12 C.F.R. § 223.23, and she therefore had one year from that date within which to file suit,

which she did on May 1, 2002, in state court, and (2) the pendency of the state-court action

filed on May 1, 2002, tolled the statute of limitations until the mandate was issued in the state

proceedings on October 24, 2006.  Without articulating such within this section of her

response, Plaintiff also contends that Defendants' alleged fraudulent concealment of the

prepayment penalty operated to equitably toll the running of § 1640(e) and § 1635(f).

There are two limitation periods under the TILA depending upon the remedy sought.

Where monetary damages for violations of the TILA are sought, there is a one-year statute of

limitations.[21]  *See* 15 U.S.C. § 1640(e) ("[a]ny action under this section may be brought in any

United States district court, or in any other court of competent jurisdiction, within one year

from the date of the occurrence of the violation.").  The violation "occurs" when the

transaction is consummated.  *In re Smith,* 737 F.2d 1549, 1552 (11th Cir. 1984); *Moor v.

Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986).  Thus, in this case, the one-year period

begins to run upon the date of the closing of the loan transaction.  On the other hand, where a

consumer seeks rescission of a contract for a material violation of the TILA, the right to

rescind "shall expire" three years after the loan closes or upon sale of the secured property

whichever date is earlier."[22]  15 U.S.C. § 1635(f).

---

[21]A creditor is liable for money damages for any failure to comply with the requirements of the TILA.  15 U.S.C. § 1640(a); *In re Smith,* 737 F.2d at 1552. Nondisclosure of a fact required to be disclosed by the TILA is a violation of the same, and the omitted fact need not be material for the creditor to be liable for money damages. Nondisclosure is not a continuing violation for the purposes of the statute of limitations.  *In re Smith*, 737 F.2d at 1552.

[22]Initially, the TILA gives a consumer the right to rescind a covered transaction for three days following the execution of the transaction. 15 U.S.C. § 1635(a).  The rescission period may be extended to three years if the TILA-required disclosures are not accurate or are not provided to the consumer at the time of the transaction.  *Id.* at § 1635(f); 12 C.F.R. § 226.23(a)(3).  To rescind a covered transaction, the TILA requires that the consumer give

The one-year limitations period is subject to equitable tolling. *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 706 (11th Cir. 1998) ("We therefore agree with the Third, Sixth, and Ninth Circuits that the statute of limitations in the TILA is subject to equitable tolling.").  Where equitable tolling applies, a plaintiff may bring suit after the statutory period has expired if she has been prevented by inequitable circumstances from doing so previously. *See Ellis,* 160 F.3d at 706.  Plaintiff bears the burden to show that equitable tolling is warranted.  *Booth v. Carnival Corp.*, 522 F.3d 1148, 1150 (11th Cir. 2008).  Conversely, equitable tolling does not apply to claims for rescission under the TILA, because "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if the lender has never made the required disclosures.  *See Beach,* 523 U.S. at 412-13.  Thus, § 1635(f) is a statute of repose and not a statute of limitation; it "says nothing in terms of bringing an action but instead provides that the 'right of rescission shall expire' at the end of the time period.  It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous." *Id.* at 417.

Viewing the facts in the light most favorable to Plaintiff, her causes of action for damages under the TILA are time barred.  The loan transaction at issue closed on July 26, 2000, and thus, the limitations period began on that date and ended on July 25, 2001.  Absent some basis for tolling, Plaintiff's claims for monetary damages under § 1640(a), initiated

---

the lender notice of the rescission during the applicable rescission period.  The lender then has twenty days within which to return all amounts paid by the consumer.  Once that is done, the consumer must tender the property that was the subject of the transaction back to the lender. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(3).

more than six years after the loan transaction, are clearly time barred by the one-year statute of limitations set forth in § 1640(e).  Here, Plaintiff's own proof shows that by May 23, 2001, she and her husband notified Countrywide of the alleged alteration of the documents to add a prepayment penalty provision and demanded the mortgage be invalidated for that reason. While they insist that Defendants kept from them the forged TILA disclosure despite numerous demands, by Plaintiff's own allegations and proof, in November 2001 she and her husband obtained from the title company a copy of the disputed loan documents including the allegedly forged TILA disclosure (Ex. Q-2) and note (Ex. Q-1).  Also in November 2001, they retained a forensic document examiner to review the documents and by his report, their signatures on the TILA disclosure (Ex. Q-2) are forged and Mr. Madura's initials on page two of the note (Ex. Q-1) are also.  Despite this knowledge, it was not until July 15, 2003, that Mrs. Madura filed an amended complaint against the Defendants in state court and for the first time alleged damages for Defendants' violations of the TILA by forging their signatures and changing the terms of the loan to add a prepayment penalty before uttering it into the public record.  It was not until November 6, 2006, that the balance of her assorted TILA claims were filed in this court.  Contrary to her assertions, Plaintiff does not present a factual or legal basis for an equitable tolling of the limitations period beyond November 2001 that saves her claims for damages under § 1640(a).[23]

---

[23]The finding that the limitations period was tolled until November 2001 accepts the facts in the light most favorable to Plaintiff with regard to the tolling theories of fraudulent concealment and/or delayed discovery urged by Plaintiff.  By that time it is undisputed that Plaintiff claimed fraud and forgery in regards to the closing documents and had possession of documents in support thereof (regardless of whether she obtained them from the Defendants). This finding is also in accord with the state judge's finding.  In his order granting summary

To the extent Plaintiff contends that the pendency of the state court litigation tolled the limitations period applicable in this litigation, the claim is also without merit. On this point, the following is instructive:

> To ascribe a blanket tolling effect to the State court action would be inconsistent with the line of Florida cases . . . . Rather, the proper scope of a prior action's tolling effect is that the time during which such cause is pending will be deleted from the limitation period applicable to a different action only where the existence of the former prevents the pursuit or exercise of the latter remedy. As this is an In personam claim involving citizens of different states, the Florida and Federal courts have concurrent jurisdiction, and the pendency of the State court action did not prevent Plaintiffs from instituting and prosecuting this cause. Therefore, the Statute of Limitations, as it relates to this cause, was not tolled during the period that the State court action was pending.

*Fernon v. Itkin*, 476 F. Supp. 1, 3-4 (M.D. Fla. 1977) (citations omitted); *see also* 54 C.J.S. Limitations of Actions § 160 (generally, when a party elects a remedy by bringing an action in state court instead of federal court or vise versa, the statute of limitations runs against a claim brought thereafter in another court."). Here, concurrent jurisdiction existed over Plaintiff's TILA claims and nothing prevented her from also filing suit in this court during the pendency of the state court litigation. *See Fernon*, 476 F. Supp. at 3-4; *cf. Booth*, 522 F.3d at 1152-53 (holding that district court appropriately equitably tolled the parallel federal action during the pendency of the state action where action was filed in state court with competent jurisdiction but venue was improper and plaintiff did not sleep on his rights); *Bailey v.*

---

judgment, the state judge found from Plaintiff's own representations, that while she knew at an earlier date of the alleged forgery to the note, it was not until November 2001 she learned of the alleged forgery to the TILA disclosure. *See* (Doc. 12-15 at 2).

19

*Carnival Cruise Lines, Inc.*, 774 F.2d 1577, 1581 (11th Cir. 1985) (holding that the filing of a federal statutory claim in a state court without jurisdiction will not toll the running of a contractual time bar).  Unlike the facts presented in *Booth*, the interests of justice are not best served here by allowing the Plaintiff, who slept on her rights, to proceed again in this court.

Plaintiff's reliance on the Supreme Court's decision in *Burnett* is not compelling.  In that case, the Court held that a state action can toll the statute of limitations where there is concurrent state and federal jurisdiction.  *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424 (1965).  In so holding, the Court found that the statute of limitations was tolled by a FELA action timely commenced in a state court with jurisdiction even though it was subsequently dismissed for improper venue.  *Id.* at 434-35.  Under the circumstances that exist here (litigation proceeded in full in state court action where federal court had concurrent jurisdiction), *Burnett* is distinguishable.  The state court case in *Burnett* was dismissed because of improper venue and the plaintiff therein had diligently pursued his case.  In this case, Plaintiff fully prosecuted the state court action and fully appealed all adverse decisions.  There simply are no equitable grounds present in the facts of this case as would justify tolling of the statutes of limitations as there were in *Burnett*.

For the reasons set forth above, Plaintiff's claims for damages under the TILA at Counts I, II, V, VIII, XI, XIII, XIV, XVIII, and XIX are time barred.[24]

---

[24]It is likely that certain of these counts fail to even state a violation of the TILA.  For example, Plaintiff complains of Defendants' failure to provide her with a "new" notice of a right to rescind in Count I (based on the alleged "second" contract) and to disclose the allegedly forged TILA document and note in Count VII.  Factually, it is dubious that those allegations state a claim under TILA.  Additionally, Plaintiff's claims in Counts II, XI, XIII, XIV, XVIII and XIX purportedly allege claims under the HOEPA and it has not been

As for Plaintiff's claims for damages in Counts III and IV (alleging Defendants are liable under § 1640 for failing to honor Plaintiff's requests and/or notices of rescission in May 2001 and December 2004), they are time barred as well.  These claims are discussed separately because while such are still subject to a one-year limitations period, the limitations period for these claims did not begin to run on the date of the mortgage closing.  Rather, the limitations period was triggered, at the latest, twenty days after Defendants received notice of Plaintiff's intent to rescind and failed to respond to the notice.  *See* 15 U.S.C. § 1640(e) (stating that a cause of action for failure to comply with requirements of the TILA may be brought within one year from the date of the occurrence of the violation); *Belini v. Washington Mut. Bank, FA*, 412 F.3d 17, 26 (1st Cir. 2005) (providing that, where lender does not respond to rescission notice, the date violation occurred for purposes of one-year limitations period was, at the latest, the twentieth day after lender received notice).  Here, the record reflects that Defendants' received Plaintiff's letter demanding that "the forged mortgage agreement be invalidated" on or about May 29, 2001.  *See* (Doc. 1, Ex. F; Doc. 189, Ex. J at ¶ 10).  Consequently, the limitations period began on June 18, 2001, and ended on June 18, 2002.[25]  Although Plaintiff filed suit in state court in May 2002, she did not allege

---

established (or briefed) in this litigation that the mortgage loan at issue in this case is a mortgage loan within the definition set forth in 15 U.S.C. § 1602(aa) and thus subject to the provisions of the HOEPA.  Furthermore, the statutory provisions relied upon by Plaintiff in Count XIV applies only to credit transactions with a fixed interest rate, *see* 15 U.S.C. § 1639(a)(2)(A), and the interest rate in the mortgage loan here is a variable rate.  Because all of Plaintiff's claims for damages are time barred or otherwise precluded, these issues need not be resolved.

[25]Plaintiff is correct that the refusal to honor a rescission notice, in violation of 15 U.S.C. § 1635, gives rise to a separate § 1640 claim for damages.  *See In re Smith*, 737 F.2d at

TILA claims at that time and the TILA claims she asserted in her amended complaint in July 2003 did not seek rescission. As such, the instant claims were not raised until Plaintiff filed suit in this court in November 2006. Accordingly, the TILA claims asserted in Counts III and IV for statutory damages are untimely and barred by the statute of limitations.[26]

As for the claims for rescission in the TILA counts, a consumer's right of rescission pertains only to material nondisclosures. If a lender fails to make any material disclosures, or makes any of them inaccurately, the consumer has up to three years from the date of the loan transaction to exercise her right of rescission. 15 U.S.C. § 1635; 12 C.F.R. § 226.23(a)(3). Material disclosures are defined as disclosures, as required by the TILA, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amounts of payments, the due dates or periods of

---

1552; *Arnold v. W.D.L. Invs., Inc.*, 703 F.2d 848, 850 (5th Cir. 1983); *Velardo v. Fremont Inv. & Loan*, No. 6:07-cv-*1253-Orl-31GJK, 2008 WL 1897569, \*2 (M.D. Fla. 2008) (citing Malfa v. Household Bank, F.S.B.*, 825 F. Supp. 1018, 1020 (S.D. Fla. 1993)). However, Plaintiff cites no authority to support her assertion that Defendants' alleged refusal to honor her second notice of rescission of December 2004 constitutes a separate TILA violation. Rather, it appears to be part and parcel of her claim that Defendants violated the TILA in light of their refusal to honor her May 2001 rescission request. *See Percival v. Am. Home Mortgage Corp.*, 469 F. Supp. 2d 409, 413 (N.D. Tex. 2007) (finding that a plaintiff's subsequent efforts to enforce right of rescission did not give rise to additional or discrete violations of rescission provisions of The TILA). In any event, the claim is time barred. The notice requesting rescission was received by Countrywide on or about December 24, 2004. *See* (Doc. 1, Ex. R). Thus, the limitations began running twenty days thereafter on January 13, 2005, and ran to January 13, 2006. Plaintiff did not file the instant suit until November 6, 2006.

[26]As indicated above, the pendency of the state court action did not toll the limitation periods applicable in this case. Plaintiff does not assert other grounds that support equitable (or otherwise) tolling the limitations periods of these claims.

payments scheduled to repay the indebtedness, and the disclosures required by § 1639(a).  29
15 U.S.C. § 1602(u); 12 C.F.R. § 226.23 n. 48.  Regulation Z sets forth the effects of a
consumer's valid exercise of a right of rescission.[27]  *See* 12 C.F.R. § 226.23(d).

The Eleventh Circuit has expressed that an action for rescission for material
nondisclosures under § 1635(f) is subject to a three-year statute of limitations.  *See In re
Smith*, 737 F.2d at 1554.  In a later case, the Supreme Court determined that § 1635(f), by its
express terms, did more than limit the time for bringing a suit and instead "governed the life
of the underlying right as well."  *Beach*, 523 U.S. at 417.  Thus by its terms, § 1635(f)
provides the right of rescission shall expire three-years after the date of the consummation of
the loan (or upon the sale of the property whichever occurs first).  Section 1635(f) mirrors a
statute of repose rather than a statute of limitation because it extinguishes the right of
rescission after a specified period of time rather than providing that a cause of action must be
brought within a certain period of time after the cause of action accrued.  *See id.* at 414-18.
While a statute of limitation is contingent, a statute of repose is absolute in that it destroys the
previously existing rights so that, on the expiration of the statutory period, the cause of action

------

[27]The First Circuit has succinctly summarized the rescission process: "The rescission
process is intended to be private, with the creditor and debtor working out the logistics of a
given rescission.  Not all debtors who suspect (or know) that they have been subjected to a
TILA violation will choose to rescind, in large part because rescission entails the return of the
loan proceeds to the creditor.  If, however, a debtor elects to rescind, the mechanics of
rescission are uncomplicated: the debtor notifies the creditor in writing of his or her desire to
rescind, and the creditor must respond to that election within twenty days.  During this
response period, the creditor may comply with the request, resist rescission entirely, or agree
to rescission while seeking equitable modifications.  Should disagreements ensue or problems
arise, either party may repair to federal court."  *McKenna v. First Horizon Home Loan Corp.*,
475 F.3d 418, 421-22 (1st Cir. 2007) (citations omitted).

no longer exists. *Bradway v. Am. Nat'l Red Cross*, 992 F.2d 298, 301 (11th Cir. 1993) (quoting *Wright v. Robinson*, 426 S.E.2d 870, 871-72 (Ga. 1993)).  One aspect of this distinction is that claims barred by a statute of limitations are subject to dismissal as time barred, while claims barred by a statute of repose deprive the court of jurisdiction.  Moreover, as set forth above, claims subject to a statute of repose are not subject to equitable tolling.

Turning now to Plaintiff's claims, a consumer can exercise her right to rescind simply by notifying the creditor of the rescission in a written communication.  *See* 12 C.F.R. § 226.23(a)(2) ("To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication.").  Here, the letter demanding invalidation of the forged mortgage sent to Countrywide in May 2001 arguably was such a written communication notifying the lender of the Maduras' intent to rescind the mortgage loan and such was made within the three-year period after the closing.[28]  To the extent that the letter sought the invalidation of the mortgage agreement, it was ignored by Countrywide.  Plaintiff, however, did not sue for rescission until she filed suit in this court in November 2006.[29]  If *Beach* is read to require that Plaintiff had to initiate suit, after giving

---

[28]Assuming that Defendants' alleged nondisclosures gave rise to a valid right to rescind, Plaintiff's right to rescind would extend for three years from the date of the of the loan transaction or until July 26, 2003, pursuant to § 1635(f).

[29]To the extent Plaintiff suggests that she alleged TILA violations in the original state court complaint in May 2002, the documentary evidence does not support such.  In an attempt to support this suggestion Plaintiff points to the Defendants' answer to her complaint in this litigation.  (Doc. 189 at 17).  In their answer, Defendants admitted that Plaintiff claimed TILA violations in her original state court complaint.  (Doc. 118, ¶ 27).  However, that admission is not controlling.  Plaintiff's original state court complaint clearly does not state claims for violations of the TILA.  Furthermore, to the extent Plaintiff contends that her TILA claims alleged in amended state court complaint in July 2003 relate back to the date of the original

written notice, within the three-year period of repose, then her right of rescission was extinguished by the time the claims were first brought in this court in 2006.  On the other hand, if rescission was accomplished by the written notice (and such is suggested by the statute and regulations), and the three-year period is not a limitations period, then the claims in this court would appear not to be time-barred.  Unfortunately, courts addressing similar circumstances have reached different conclusions and I have found no Eleventh Circuit authority on point.[30]

Of the cases that have addressed this issue, two approaches have been taken.  In the first, courts have determined that so long as the plaintiff requested rescission within the three-year time period, suit could be brought after the expiration of the same.  *See Jackson v. CIT Group/Consumer Fin., Inc.*, No. 2:06-cv-543, 2006 WL 3098767 (W.D. Pa. 2006); *see also Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164-65 (9th Cir. 2002) (suggesting same); *In re Chabot*, 369 B.R. 1, 14-15 (Bankr. D. Mont. 2007); *Roberts v. WMC Mortgage Corp.*, 173 Fed. Appx. 575, 576 (9th Cir. 2006).  Under the second approach, the courts conclude that even though the notice of rescission was timely, the suit was barred when filed after the three-year time period.  *See Nix v. Option One Mortgage Corp.*, No. Civ. 05-03685(RBK), 2006 WL 166451 (D. N.J. 2006); *see also Kamara v. Michael Funding, LLC*, 379 F. Supp. 2d 631, 634 (D. Del. 2005) (providing that, even if a borrower has attempted to rescind the

---

complaint, the state court judge ruled otherwise.  (Doc. 12, Ex. 11 at 4).

[30]My research has revealed no post-*Beach* decisions from the Eleventh Circuit on this point.  Obviously, if the rule in *In re Smith* still applies, Plaintiff's rescission claims would be time barred because they were not brought within three years of consummation of the mortgage loan.

transaction within the initial three day period following execution of the loan transaction, that attempt is not sufficient to preserve a right to rescind which is claimed more than three years from the date the transaction was consummated).

In this suit, I find it unnecessary to resolve the conflicting views of these courts. In this circuit, precedent dictates a three-year period of limitation on the bringing of an action for rescission under the TILA. *In re Smith*, 737 F.2d at 1554. That decision was not expressly overruled by the Court in *Beach* and thus appears still controlling.[31] In any event, whether the claims are time barred or not, as set forth below, I find that the claims for rescission are all precluded on principles of collateral estoppel and/or res judicata and the court need not reach the issue on this suit.[32]

Defendants also argue that Plaintiff's state law claims sounding in fraud and usury are barred by the statute of limitations set forth in § 95.11(3) of Florida Statutes.[33] By this argument, Defendants assert that because the statute provides a four-year statute of

---

[31]Given that § 1635(f) serves to wholly extinguish the right of rescission after three-years from the consummation of the loan, it appears the better rule that any action on the rescission must be brought, as well, within the three-year period of repose or the court is without jurisdiction to entertain the same.

[32]Plaintiff's citation to *In re Gurst*, 79 B.R. 969 (Bankr. E.D. Pa. 1987), and *Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir. 1980), *see* (Doc. 189 at 16-17), is unavailing. *In re Gurst* is factually distinguishable and the Third Circuit has declined to follow it. *See Smith v. Fid. Consumer Discount Co.*, 898 F.2d 896, 904 (3d Cir. 1990). As for *Rudisell*, Plaintiff reads too broadly its statement pertaining to the continuing right to rescind, and its holding does not bolster her position. Furthermore, neither case is controlling.

[33]*See* Counts VI, VII, IX, X, XII, XV- XVII. It is not entirely clear whether Count VI raises a claim of rescission under a state law fraud theory or contract theory. It appears that under Florida law, the statute of limitations would be the same. *See* Fla. Stat. §§ 95.11(3)(j) and (l).

limitations for these claims and each claim arose out of the July 26, 2000, loan transaction, the time for bringing each of the claims expired in July 2004.  Because Plaintiff did not bring her instant Complaint (Doc. 1) until November 2006, Defendants maintain that her state law fraud and usury claims were brought over two years too late.  In anticipation of Plaintiff's response, Defendant asserts that the pendency of the state court action did not toll the time within which Plaintiff could bring her claims.[34]  (Doc. 175 at 11-12).

Plaintiff counters that her fraud and usury claims are not time-barred because Defendants fraudulent and usurious actions are subject to the continuing offense doctrine and thus the statute of limitations is tolled during which time the fraudulent and usurious offenses continue.[35]  According to Plaintiff, Defendants last committed fraud in May 2007; uttered fraudulent documents in 2006 when they submitted such to the Florida District Court of Appeals and the Florida Supreme Court; and violated the FCFA in May 2001 and February 2002 (Count XVII) and again in April and May 2007.  Relying on *Burnett,* Plaintiff also contends that her filing suit in state court in 2002 tolled the statute of limitations as to the claims raised in this federal action.  (Doc. 189 at 15-16).

Construing the facts in the light most favorable to Plaintiff, the counts alleging fraud and usury are time-barred.  Under Florida law, a legal or equitable action founded on fraud shall be commenced within four years, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered.  Fla. Stat.

---

[34]Defendants rely on *Fernon*, 476 F. Supp. at 3-4.  (Doc. 175 at 12, n.9).

[35]Plaintiff relies on *Rosen v. State*, 757 So.2d 1236 (Fla. Dist. Ct. App. 2000).

§§ 95.11(3)(j), 95.031(2)(a).  Likewise, a claim for usury, which appears to be an action for a statutory penalty or forfeiture, must be brought within four years.  Fla. Stat. § 95.11(3)(n); *see also* 32 Fla. Jur. 2d Interest and Usury § 96.  By her own allegations, Plaintiff, at the latest, knew of the alleged fraudulent conduct by November 2001.  With regard to the alleged usurious conduct, the claim for usury in Count X is based on the payoff demand statements or communications from Countrywide.  Plaintiff's complaint and the accompanying exhibits acknowledge that these communications were made to and confronted by the Maduras in April and May 2001.  By written notice, Countrywide waived any prepayment penalty in July 2001.  As for the usury claim in Count XII, it is based on the rate of interest indicated on the face of the Adjustable Rate Rider, a copy of which is attached to the complaint.  The rider was signed by Plaintiff and dated July 26, 2000.  The fraud and usury claims made in this court were not brought until November 6, 2006, well beyond the applicable statute of limitations, and absent some basis for tolling, they are all time barred.

Plaintiff asserts that the continuing offense doctrine, at times applied in criminal cases, applies to toll the running of the limitations periods in this case.  Alternatively, she asserts that the timely filing of fraud and usury claims in state court tolled the limitations period for the bringing of the federal action.  Neither argument has merit.  The continuing offense doctrine typically applies, if at all, to criminal offense statutes.  If it applies, it tolls the accompanying criminal limitations statute.  In *Rosen,* the case on which Plaintiff relies, the court explained that because criminal limitation periods are to be interpreted in favor of repose and statute of limitations for criminal offenses typically begin to run when the crime is complete, the doctrine should be applied only in limited circumstances such as where the

28

explicit language of the substantive criminal statute compels such a conclusion or the crime is one in which the legislature must have intended to be treated as a continuing one. *Rosen*, 757 So.2d at 1238 (quoting *Toussie v. United States*, 397 U.S. 112 (1970)). Here, Plaintiff cites no authority in support of her assertion that the continuing offense doctrine applies to civil cause of actions for fraud, usury or uttering in Florida.[36] Furthermore, the statutory language (for those claims in which Plaintiff asserts statutory violations) does not support Plaintiff's reliance on the doctrine. Absent citation to a similar application of law by Florida courts in the civil context, Plaintiff's reliance on such fails.[37]

Plaintiff's reliance on *Burnett* for her state court tolling theory also fails. In *Burnett*, the Supreme Court held that an action filed in state court tolled the statute of limitations in a FELA case where the plaintiff properly filed in state court, but in the wrong venue. The Supreme Court reasoned that tolling was appropriate under the circumstances because the plaintiff's state court case was dismissed on venue grounds, the plaintiff had not slept on his rights, and the defendant could not have relied on the repose period in the limitations statute because he was aware that the plaintiff was actively pursing his FELA remedy. *Burnett*, 380 U.S. at 428-35. *Burnett* is distinguishable. As indicated previously, the circumstances here do not support tolling given that Plaintiff had the opportunity to fully litigate her claims in

---

[36]Plaintiff is correct that the explicit language of the FCFA indicates that under certain circumstance, the prohibited criminal conduct is subject to the continuing offense doctrine. *See Rosen*, 757 So.2d at 1238-39. She cites no authority wherein the Florida courts have applied the same in a private cause of action.

[37]While Plaintiff does not argue such, the continuing torts doctrine is recognized in Florida. *See Halkey-Roberts Corp. v. Mackal*, 641 So.2d 445, 447 (Fla. Dist. Ct. App. 1994). Given the nature of Plaintiff's allegations, i.e., discrete acts, the doctrine is inapplicable.

state court and did so for roughly six years.  Further, it cannot be said that the Plaintiff here

did not sleep on her rights given that she had a full and fair opportunity to litigate her claims

in state court and yet failed to bring all of the claims she could have and should have asserted.

Although the parties do not expressly address the Plaintiff's uttering claim found at

Count XV in relation to a time bar, it is worth mentioning in brief.  That claim is based on the

delivery of the allegedly forged loan documents to Transcontinental Title Company on or

about July 27, 2000, and the mailing and faxing to the Maduras the allegedly forged note in

May 2001 and February 2002.  Plaintiff also alleges repeated uttering offenses for the filing

of the allegedly forged documents in the courts.[38]  She bases her claims on § 831.02 of

Florida Statutes, which sets forth the criminal violation of uttering a forged instrument,[39] and

§ 831.09 of Florida Statutes, which sets forth the criminal violation of uttering forged bills,

checks, drafts or notes.[40]  The statutory language does not expressly create a private cause of

action.  Nor is such reasonably inferred.  In cases such as this, i.e., where the legislature has

---

[38]This claim was first expressed in Count II of Plaintiff's Amended Complaint in state court wherein she alleged a TILA violation by forgery of the borrowers' signature on the TILA disclosure and uttering the same into the public records.

[39]"Whoever utters and publishes as true a false, forged or altered record, deed, instrument or other writing mentioned in s. 831.01 knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."  Fla. Stat. § 831.02.

[40]"Whoever utters or passes or tenders in payment as true, any such false, altered, forged, or counterfeit note, or any bank bill, check, draft, or promissory note, payable to the bearer thereof or to the order of any person, issued as aforesaid, knowing the same to be false, altered, forged, or counterfeit, with intent to injure or defraud any person, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."  Fla. Stat. § 831.09.

afforded a penal remedy and has not expressly declared a private right of action, courts look to the statute to determine whether it plainly imposes a duty for the benefit of an especial class of individuals. *See Roger Rankin Enters., Inc. v. Green,* 433 So.2d 1248, 1249-51 (Fla. Dist. Ct. App. 1983) (Pearson, J., concurring). A fair reading of the statutes does not support that the legislature plainly intended to impose such a duty. Even if it had, the likely beneficiary would be the person injured by the uttering, which in this case would not be the Plaintiff given that she was not injured as a result (of the alleged uttering) because Countrywide waived the prepayment penalty. In any event, regardless of any issue concerning the timeliness of such claim, it clearly could have and should have been raised in state court, and, as set forth below, Plaintiff is precluded from attempting to litigate it in this court.

B.

Defendants argue generally that all of Plaintiff's claims are precluded under the doctrines of claim and issue preclusion. In sum, Defendants contend that Manatee County Circuit Court is a court of competent jurisdiction, it entered final judgment on the merits against Plaintiff, the parties in the state court action and this action are identical, there is sufficient identity of the causes of action brought in each case because the factual issues underlying Plaintiff's state and federal lawsuits arise out of the same operative nucleus of fact, and in any event, all the claims could have and should have been brought in state court. With regard to individual counts, Defendants assert that the TILA counts in the amended state court complaint (Counts I and II) alleged that the TILA was violated because the terms of the loan were changed when the TILA disclosure (and note) provided at closing were altered to

31

add a prepayment penalty and that the Maduras signatures were forged; whereas, in the instant action, Plaintiff alleges TILA violations based directly and indirectly upon the alleged addition of a prepayment penalty and the forgery.  Defendants contend that any slight variation in the federal claims does not change the preclusion analysis because all allegations arise out of the same operative facts surrounding the loan transaction in July 2000.  Similarly, Defendants contend that the usury claims in the amended state court complaint (Counts III and IV) are similar to Counts X and XII of the instant Complaint.  As for the claims of fraud in the amended state court complaint (Counts V and VI), Defendants urge that similar factual allegations support Plaintiff's claims in Counts VI, VII, IX, XV, and XVI of the instant Complaint.  Defendants concede that the amended state court complaint did not include a claim under the Florida Communications Fraud Act such as Count XVII of the instant Complaint, they urge nonetheless that the claim is precluded because it could have been brought in the state court action as the supporting allegations rest on the same operative facts.[41]  (Doc. 175 at 7-11).

Plaintiff disputes that her claims are precluded, asserting that the doctrine applies only to issues actually litigated.  By her argument, there is no preclusion where the claims did not exist and could not have been brought earlier.  By this argument, she maintains that her claims seeking rescission under the TILA and Counts IV, VI, VII, IX, XV, XVI, and XVII are not precluded because the violations alleged therein did not exist "prior to the April 20,

---

[41]In support of their arguments, Defendants primarily rely on *Konikov v. Orange County, Fla.*, No. 07-11888, 2007 WL 3096558 (11th Cir. 2007); *Saboff v. St. John's River Water Mgmt. Dist.*, 200 F.3d 1356 (11th Cir. 2000); and *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265 (11th Cir. 2002).  *See* (Doc. 175 at 9, 11).

2004 summary judgment hearing."[42]  (Doc. 189 at 10).  Plaintiff also urges that preclusion is not available because the state court did not adjudicate the sixteen counts of rescission, the forgery/failure of contract action (Count VI), the forgery/concealment claim (Count VII); the claims for fraud in the inducement under Fla. Stat. § 817.54 (Count IX) and fraud under Fla. Stat. § 817.034 (Count XVII), the claim for uttering (Count XV), and the claim for fraud/spoliation (Count XVI).  *Id.* at 11.  Plaintiff contends that she was unable to assert these claims because the Defendants have stonewalled discovery in this court and in state court preventing her from discovering necessary matters.  Citing *Hearndon v. Graham*, 767 So.2d 1179 (Fla. 2000), she urges that under the "delayed discovery" doctrine, a cause of action does not accrue until a plaintiff knows or reasonably should know of the tortious act giving rise to the cause of action.  Thus, because of the alleged denial of discovery, her claims cannot be precluded.  Finally, Plaintiff urges that a dismissal based on lack of standing has no preclusive effect and thus her usury claims and TILA claims can again be asserted here.

Upon consideration, I conclude that all of the Plaintiff's claims are precluded either on principles of issue preclusion or claims preclusion.  First, Defendants are correct in their

---

[42]To support this argument, Plaintiff attempts to restate some of the claims in her complaint.  Thus, she claims Count IV alleges Defendants' failure to honor a notice/request of rescission made by her and her husband *in December 2004*; Defendants "committed uttery" *in 2006* by submitting allegedly forged documents (presumably the TILA disclosure and note) to the Second District Court of Appeal and the Florida Supreme Court; she has been denied the opportunity to raise a new claim for the alleged forgery of dates on the notices to cancel which she allegedly didn't discover *until 2007*; Defendants recently violated fraud in the inducement laws *in April and May 2007* by sending a notice of default with a "forged" note; and she was prevented from suing for false notarization and spoliation until evidence developed in early 2008.  These allegations are not part of her Complaint and Plaintiff incorrectly and improperly urges otherwise.

assertions that the Manatee County Circuit Court is a court of competent jurisdiction; that court entered final judgment on the merits against Plaintiff; and the parties in the state court action and this action are identical.  Furthermore, the undisputed evidence establishes that there is a sufficient identity of the causes of action brought in each case to call for the application of the preclusion doctrines.  All of Plaintiff's state and federal claims arise out of the same operative nucleus of facts surrounding the loan closing in July 2000.  To the extent that the state courts adjudicated the state claims for usury and fraud by dispositive findings that Plaintiff was not a borrower and suffered no damages, she is not entitled to reargue the merits in this court.[43]  Similarly, to the extent that the state judge found the TILA claims time barred, Plaintiff may not revisit the issue here.[44]  Contrary to Plaintiff's assertions, principles

---

[43]For the identity of issues requirement under issue preclusion, the standard is whether the second suit contains issues that were common to both the first and second causes of action and were adjudicated through prior litigation. *Lorf v. Ind. Ins. Co.*, 426 So.2d 1225, 1226 (Fla. Dist. Ct. App. 1983).  Specifically, where Plaintiff alleges the same injuries in the second suit that were alleged in the first, and where both suits allege that Defendants' actions caused these injuries, the issues are identical for purposes of collateral estoppel. *See Red Carpet Corp. of Panama City Beach v. Roberts*, 443 So.2d 377, 379-80 (Fla. Dist. Ct. App. 1983).  In the present case, Plaintiff alleges in both the first (state court) and second (federal court) complaints that she was injured as a result of Defendants' fraudulent actions in changing by forgery or otherwise the mortgage contract between the parties to add a prepayment penalty and by charging usurious interest on the loan.  Similarly, where both the first and subsequent proceeding involve the same dispositive question, it falls "squarely within the purpose of issue preclusion." *M.C.G. v. Hillsborough County Sch. Bd.*, 927 So.2d 224, 227 (Fla. Dist. Ct. App. 2006).

[44]A dismissal based on statute of limitations grounds constitutes an adjudication on the merits for purposes of res judicata. *Allie v. Ionata*, 503 So.2d 1237, 1242 (Fla. 1987) (Given the construction of Federal Rule 41(b) in the federal courts, and in light of the unambiguous language of our Rule 1.420(b), we are compelled to hold that dismissal based on limitations statutes are adjudications on the merits for res judicata purposes); *but see Henson v. Columbus Bank & Trust Co.*, 651 F.2d 320, 324 (5th Cir. 1981) (state court dismissal of TILA claim because it was time barred was not res judicata as to the TILA claim in federal court).

of res judicata do apply in these circumstances and Plaintiff has demonstrated no set of facts or circumstances which upon close scrutiny reveal that she was prevented form asserting all of the claims asserted in this court when she sued in state court.  Her claims that her causes of action arose later in time (and her efforts to amend her complaint in this response notwithstanding) are not borne out on careful review.  Furthermore, none of her claims in this Complaint were prevented because of a lack of evidence or late discovered evidence, even assuming she could establish such a predicate.  As set forth above, the closing was in July 2000.  By May 2001, the Maduras were demanding the forged mortgage agreement be invalidated and they supplied documents to support the demand.  By November 2001, Plaintiff had recovered the allegedly forged TILA disclosure statement and obtained expert support for her claims of changed or forged documents and fraud.  The factual and legal basis for any and all of Plaintiff's TILA violations were then available to her.  The same conclusion results for her usury claims, which were based on the loan documents and calculations from the payoff demand letters and communications from Countrywide in March and April 2001.  Her claim under the Florida Communications Fraud Act (even assuming a private cause of action may be brought thereunder) purports to allege a scheme to defraud Plaintiffs three times: in April and May 2001, and February 2002, by use of forged loan documents and the payoff demand communications.  These clearly could have and should have been brought in state court.  Finally, even assuming there is such a private cause of action for uttering, Plaintiff's uttering claim based on the Defendants' transmission and use of the allegedly forged documents in 2000, 2001, and 2002 with the title company and others, including the courts, clearly could have and should have been brought before the state court.  Her efforts to

create a new "uttery" claim (and amend the complaint) on the basis of the later filing of documents with the courts is fatuous.

In sum, identical claims of usury, fraud and TILA violations before this court were finally adjudicated by the state courts and Plaintiff may not relitigate them again.[45]  As for those variations of those claims now asserted which were not adjudicated by the state courts, the reason they were not is because Plaintiff sat on the claims and failed to assert them.  Thus, for those claims before this court that are not precluded on the basis of issue preclusion, they are precluded under principles of claim preclusion.

Plaintiff's vague claim that many of the causes of action are raised only now because of delayed discovery at the hands of the Defendants merits brief discussion but does not pass close scrutiny.  Throughout the litigation, Plaintiff has claimed that Defendants have stonewalled her discovery efforts and she now invokes the delayed discovery doctrine[46] as a basis of avoiding preclusion.  The state court record bears out that she complained of a lack of

---

[45]The state court's findings that Plaintiff was not a borrower and suffered no damages from the Defendants' conduct are as dispositive in this court on her claims of usury and fraud as they were in state court.  *See* Fla. Stat. § 687.14(2) (defining borrower as one obtaining loan); *Gandy v. Trans World Computer Tech. Group*, 787 So.2d 116, 118 (Fla. Dist. Ct. App. (recognizing that damages are an essential element of common-law fraud).  Because I find all the claims time barred or otherwise precluded, I find no reason to address the substantive merits of these claims or the various TILA violations.

[46]Under this doctrine, a cause of action does not accrue until a plaintiff knows or reasonably should know of the tortious act giving rise to the cause of action.  Under Florida law, the delayed discovery doctrine is applicable in determining when a cause of action accrues.  It does not apply to tolling of statutes of limitations.  *See Hearndon*, 767 So.2d at 1184.  It offers Plaintiff no consolation or defense to the contention that her claims are precluded as I have found that she knew or reasonably should have known all the facts necessary to bring all her claims before the state court yet she failed to do so.

discovery in the trial court and that discovery was there curtailed at the request of the Defendants pending resolution of potentially dispositive legal issues.  Previously, I have found that her complaints concerning limited discovery are not without some merit.  *See* (Doc. 223 at 4 n. 4).  Nonetheless, discovery in this court has been somewhat truncated as well given the nature of the legal issues pending before the court.  Plaintiff has not been afforded all the depositions she would like and production from the Defendants has not been as timely as it should have.  However, upon a careful review of the state and federal records, Plaintiff and her husband received from Defendants or otherwise procured on their own all the documents and information necessary to formulate each of the claims made in this court in time to raise them in state court.  Despite her protests, Mrs. Madura fails to establish that the denial of full discovery worked to deny her a full and fair opportunity to litigate her claims in state court  such that issue or claims preclusion may not be invoked to bar her claims in this court.

## IV.

Accordingly, for the foregoing reasons, it is RECOMMENDED that **Full Spectrum's and Countrywide's Motion for Summary Final Judgment Against Mrs. Madura and Incorporated Memorandum of Law** (Doc. 175) be GRANTED.  It is RECOMMENDED further that the Clerk be directed to enter Judgment in favor of the Defendants and against the Plaintiff, with both sides bearing their own fees and costs.

Respectfully submitted on this
17th day of June 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Susan C. Bucklew, United States District Court Judge
Counsel of Record

## APPENDIX

|  | INITIAL STATE COURT COMPLAINT[47] by Mr. and Mrs Madura. Allegations: | AMENDED STATE COURT COMPLAINT by Mrs. Madura. Allegations: | FEDERAL COMPLAINT by Mr. & Mrs. Madura. Allegations: |
|---|---|---|---|
| **COUNT I** | **state law violations citing Fla. Stat. § 687.02 (usury - usurious contracts), Fla. Stat. § 687.03 (usury - unlawful rates of interest), Fla. Stat. § 687.04 (usury-line of credit), Fla. Stat. § 687.071 (criminal usury, loan sharking, shylocking), Fla. Stat. § 831.01 (forgery), Fla. Stat. § 831.02 (uttering forged instrument), Fla. Stat. § 895.03(1)-(4) (conspiracy & racketeering) and a violation of RESPA.** | **TILA violation, citing 15 U.S.C. § 1639(b)(A) and alleging forged TILA document to change terms of loan and add prepayment penalty. Count sought damages.** | **TILA violation, citing 15 U.S.C. § 1639 and alleging forgery of Note and TILA document to change terms of loan and add prepayment penalty; and failure to disclose; inadequate notice of right to rescind.  Count seeks rescission of loan transaction under 15 U.S.C § 1635 and statutory damages under 15 U.S.C. § 1640.** |

---

[47]The allegations in this complaint are unnumbered and are listed as counts for ease of reference.

| | | | |
|---|---|---|---|
| **COUNT II** | | **TILA violation, citing 15 U.S.C. § 1631 and alleging forgery of borrowers' signature and uttering the forged TILA document. Count sought damages.** | **TILA violation, citing 15 U.S.C. § 1639 and alleging wrongful inclusion of prepayment penalty and failure to disclose. Count also seeks rescission and statutory damages under TILA.** |
| **COUNT III** | | **State law claim for usury citing Fla. Stat. § 687.03 and alleging unlawful rates of interest on Note and Rider. Count sought damages** | **TILA violation, alleging failure to honor borrowers' 5/23/01 notice of rescission. Count also seeks rescission and statutory damages under TILA.** |
| **COUNT IV** | | **State law claim for criminal usury citing Fla. Stat. § 687.071 and alleging criminal usury, because interest exacted in payoff statements in April and May 2001exceeded 25% per annum. Count sought damages.** | **TILA violation, alleging failure to honor borrowers' 12//23/04 rescission of loan. Count also seeks rescission and statutory damages under TILA.** |
| **COUNT V** | | **State law claim for fraud in the inducement and forgery of borrowers' signature. Count sought damages.** | **TILA violation, citing 15 U.S.C § 1639 and alleging misdisclosure of monthly payment amount. Count also seeks rescission and statutory damages.** |
| **COUNT VI** | | **State law claim for fraud by charging prepayment penalty never agreed to. Count sought damages.** | **Apparent state law claim for rescission based on forgery and failure of contract. Count claims right of rescission (under TILA.)** |
| **COUNT VII** | | | **Apparent state law claim alleging forgery and fraud on TILA documents and Promissory Note and nondisclosure of same. Count seeks rescission of loan transaction.** |
| **COUNT VIII** | | | **TILA violation, citing 15 U.S.C § 1639 and alleging failure to disclose forgery of TILA document and Promissory Note. Count also seeks rescission and statutory damages under TILA.** |

| **COUNT IX** | | | State law claim for fraud in the inducement (citing Fla. Stat. § 817.54). Count seeks rescission of the loan transaction and damages. |
|---|---|---|---|
| **COUNT X** | | | State law claim for criminal usury (citing Fla. Stat. § 687.071.)  Count seeks forfeiture of principal and interest and rescission of contract. |
| **COUNT X1** | | | TILA violation, citing 15 U.S.C § 1639 and alleging nondisclosure of the amount of the maximum monthly payment.  Count also seeks rescission and statutory damages under TILA. |
| **COUNT XII** | | | State law claim for usury (citing Fla. Stats. §§ 687.03, 687.04).  Count seeks statutory damages. |
| **COUNT XIII** | | | TILA violation, citing 15 U.S.C § 1639 and alleging nondisclosure of correct interest rate and correct calculation of changes.  Count also seeks rescission and statutory damages under TILA. |
| **COUNT XIV** | | | TILA violation, citing 15 U.S.C § 1639 and alleging improper change in terms of credit and nondisclosure of "new" terms of credit.  Count also seeks rescission and statutory damages under TILA. |
| **COUNT XV** | | | State law claim for uttering forged loan documents and bills (citing Fla. Stats. §§ 831.02and 831.09).  Count seeks rescission and damages. |

| | | | |
|---|---|---|---|
| **COUNT XVI** | | | **State law claim for fraud by destroying original loan documents and replacing them with false documents.  Count seeks rescission and damages.** |
| **COUNT XVII** | | | **State law claim alleging a scheme to defraud in violation of Florida Communications Fraud Act (citing  Fla. Stat. § 817.034).  Count seeks damages.** |
| **COUNT XVIII** | | | **TILA violation, citing 15 U.S.C § 1639(a)(1)(A) and alleging failure to make specific disclosures required by this section. Count also seeks rescission and statutory damages under TILA.** |
| **COUNT XIX** | | | **TILA violation, citing 15 U.S.C § 1639(a)(1)(B) and alleging failure to make specific disclosure required by this section. Count also seeks rescission and statutory damages under TILA.** |